## HILLSBOROUGH.

MERRILL & a. v. THE BOSTON & LOWELL RAILROAD.

The statute of 1883, requiring the railroad commissioners to fix tables
of maximum charges for the transportation of passengers and freights
upon the several railroads operated within this state, does not author-
ize the commissioners to fix such charges beyond the line of the state.

CASE, for refusing the plaintiffs reasonable and equal facilities
as expressmen over the defendants' road.   The declaration con-
tained six counts.   To the first five the defendants pleaded the
general issue.   The sixth count set forth in detail facts showing
an ·alleged discrimination against the plaintiffs in the matter of
rates and facilities for the transaction of their business over the
defendants' lines in this state and Massachusetts.   In the same
count it was also alleged that upon due notice and proceedings
had before the railroad commissioners of this state and of Massa-
chusetts, the commissioners of this state made an order that the
plaintiffs pay the maximum sum of $7,020 to the defendants as an
annual rental for space not exceeding 8 by 10 feet to the car on
the two passenger trains each way daily between Keene and Bos-
ton, and two additional trains each way daily between Nashua and
Boston, and in addition thereto furnish the defendants with a good
and sufficient bond in the sum of $15,000 for the payment of said
rental monthly, and to save said railroad harmless from the loss
of money transported by said express company, and from the loss
of or damage to any articles or merchandise arising from the negli-
gence or malfeasance of the express company, its agents, or mes-
sengers; that the plaintiffs tendered due performance of all the
conditions imposed upon them by said order, and that upon request,
and offer of merchandise and express matter to be carried accord-
ing to the terms of said order from several stations on the defend-
ants' lines in this state to Boston, the defendants refused to obey
said order, and refused to receive and carry said merchandise and
express matter from places in this state over their lines to Boston,
according to their duty in that behalf.

To this count the defendants filed a general demurrer, and the
questions thereon arising were reserved for the opinion of the
court.

*Jeremiah Smith, John H. George,* and *John H. Albin,* for the
defendants.   The statute relied on by the plaintiffs is as follows:
"It shall be the duty of said board to fix tables of maximum
charges for the transportation of passengers and freights upon the

several railroads operating within this state, and shall change the same from time to time as in the judgment of said board the public good may require; and said rates shall be binding upon the respective railroads." Laws of 1883, c. 101, s. 4.

This statute was not intended to authorize the board to fix charges for transportation outside the state limits. It is the general presumption that a statute is not intended to have any extra-territorial effect. "Even where legislation in one country may properly bind its citizens in another, express words are required, or distinct implication, to give it this effect." The act in question contains nothing to give rise to such an implication, but, on the contrary, implies that only the transportation within the state is to be regulated. It must be presumed, "as the result of the general principle of the territorial limit of political jurisdiction and of the force of laws," that the statute was intended to regulate the conduct of railroad corporations "whilst operating or being in this state only." *Whitford* v. *Panama R. R. Co.*, 23 N. Y. 465— *S. C.*, 3 Bosworth 67 ; Bishop Written Laws, s. 141 ; *Needham* v. *Grand Trunk R. R. Co.*, 38 Vt. 294, 307–309 ; *Rosseter* v. *Cahlmann*, 8 Exch. 361 ; *Crowley* v. *Panama R. R. Co.*, 30 Barb. 99, 108 ; *Beach* v. *Bay State Steamboat Co.*, 30 Barb. 433 ;—see, also, *McCarthy* v. *C. R. I. & P. R'y Co.*, 18 Kans. 46—*S. C.*, 26 Am. R. 742 ; *Le Forest* v. *Tolman*, 117 Mass. 109 ; *Taylor's Adm'r* v. *Pennsylvania Co.*, 78 Ky. 348—*S. C.*, 39 Am. R. 244 ; *Buckles* v. *Ellers*, 72 Ind. 220—*S. C.*, 37 Am. R. 156 ; *Hyde* v. *W. St. L. & P. R'y Co.*, 61 Ia. 441—*S. C.*, 47 Am. R. 820 ; *Selma, R. & D. R. R. Co.* v. *Lacy*, 43 Ga. 461 ; *State* v. *P. & C. R. R. Co.*, 45 Md. 41, 47 ; *Campbell* v. *Rogers*, 2 Handy (O.) 110.

The above presumption is abundantly justified by adverting to the consequences which would result from giving the statute extra-territorial force. The most inextricable confusion and conflict would ensue. Suppose the state of New Hampshire should legislate one way as to transportation within the state of Massachusetts, and the state of Massachusetts should see fit to legislate in a different way: suppose New Hampshire enacts that passengers shall be carried in Massachusetts for two cents a mile, while Massachusetts enacts that three cents a mile may be charged for transportation within her own limits: can the will of Massachusetts as to transportation within Massachusetts be set at naught by bringing suit in New Hampshire? Is a railroad corporation, operating in both states, to be a shuttlecock between the two state battledores?

But the supposed case does not exhibit all, nor even half, the difficulty to be anticipated. If New Hampshire can legislate for Massachusetts, then Massachusetts must, in her turn, equally be entitled to legislate for New Hampshire. The result would be "confusion worse confounded." Giving an extra-territorial operation to legislation of this description would be "utterly destructive

of the independence and the harmony of the states." And the principle carried out to its logical conclusion involves the right not only of New Hampshire and Massachusetts, but also of every country on the globe, to legislate for every other country, and to make the act of a local legislature "thus practically become universal public law." Before concluding that an act is intended to have such an operation, the court would look for a very explicit declaration of the legislative purpose to give the act extra-territorial effect.

If the Boston & Lowell Railroad is to be regarded (so far as it operates in New Hampshire) as a New Hampshire corporation, still there is no presumption that the statute was intended to regulate transportation on the Massachusetts part of the road. Upon this point we call attention to the leading case of *Whitford* v. *Panama R. R Co.*, *supra*, and to the still more apposite case of *Knight* v. *Southern Pacific R. R. Co.*, 41 Tex. 406, 415. In both those cases it was decided that state legislation was not intended to affect business carried on outside the state, although carried on by railroads chartered under the laws of the state. The point is fully discussed by *Woodruff*, J., in 3 Bos. 79–82, and by *Denio*, J., in 23 N. Y. 472–474.

Nor does the fact that transportation from Keene to Boston begins in New Hampshire, or that the contract for it may be made in New Hampshire, change the presumption. Part of the transportation is to take place in Massachusetts; part of the contract is to be performed in Massachusetts; and that part is, presumptively, to be governed by the laws of Massachusetts. *Gray* v. *Jackson*, 51 N. H. 9, 39; *Barter* v. *Wheeler*, 49 N. H. 9, 29. But even if this were not so, the present decision of the commissioners could not stand. That decision goes far beyond the claim that New Hampshire may regulate inter-state transportation when the carriage commences (or the contract is made) in New Hampshire. The decision undertakes also to regulate it when the carriage commences (or the contract is made) in Massachusetts. It fixes one "lump sum" as compensation for transportation over the entire distance both ways,—not only for transportation which begins in New Hampshire and terminates in Massachusetts, but also for that which begins in Massachusetts and terminates in New Hampshire. It assumes to fix rates from Boston to Keene just as much as rates from Keene to Boston. It decides that "Merrill and Co. pay the maximum sum of $7,020 to the Boston & Lowell Railroad as an annual rental for space, not exceeding 8x10 feet to the car, on the two passenger trains each way daily between Keene and Boston, and on two additional trains each way daily between the city of Nashua and Boston."

*C. H. Burns* and *C. W. Hoitt*, for the plaintiffs. The defendants have obtained control of four New Hampshire railroads,—the

Nashua & Lowell, the Wilton, the Peterborough, and the Manchester & Keene railroads,—the first three by lease, and the latter by purchase with the Concord Railroad; and these roads, with the defendants' original road, make, and were from the start intended to form, one continuous line of railroad from Keene to Boston. The defendants thus by their own voluntary act have so far become citizens of New Hampshire as to deprive them of the right to have the cause removed to the federal courts, for the plaintiffs, also, are citizens of New Hampshire (*Memphis & Charleston R. R.* v. *Alabama,* 107 U. S. 581), and have so far become citizens of New Hampshire as to subject them to our laws. .

The five roads named, for all practical and business purposes, stand precisely as if, instead of being chartered and made separately and at different times, they had been brought into existence by one act. The leased roads and the sold road have surrendered their powers and privileges derived under their New Hampshire charters, for the time being, at least, to the defendant railroad. The upper end of the line, the Manchester & Keene Railroad, has absolutely and finally been amalgamated with and turned over to the Boston & Lowell Railroad under a judicial sale sanctioned by special statute (see Laws 1881, *c.* 232) and the order of the court. The Boston & Lowell Railroad Corporation thus becomes, by its own act, for many purposes a domestic corporation in New Hampshire. It cannot enjoy the franchises and privileges of these four New Hampshire roads without performing all of the duties these roads owe to the public. It must "give to the public substantially such a service as would be received from a single corporation, or a partnership of corporations, working the road between" Keene and Boston. "Nothing less than such a service can amount to the reasonably convenient use of that highway to which the public are entitled."

The Boston & Lowell Railroad are the proprietors of all these roads from Keene to Boston. Section 1, *c.* 159 of our Gen. Laws, is as follows: "The proprietors of a railroad shall include the corporation to which any railroad was originally granted, or into whose hands it has subsequently passed, the assignees or trustees to whom any railroad has been mortgaged for the security of debts, and any company or persons to whom it may have been conveyed." The statute also provides, *s.* 3, same chapter, that "the proprietors of every railroad shall in all things conform to the requirements of the laws, * * * and discharge their duties in carrying passengers and freight agreeably to the proper object and purpose of such railroad." Section 11: "If any proprietor * * * shall knowingly violate the provisions of any statute, etc., he may be fined," etc. Now the defendants having become by their own act proprietors of our New Hampshire railroads, they agree to be amenable to New Hampshire laws. In every one of the charters of the roads the Boston & Lowell Railroad have thus become "pro-

prietors" of, are contained provisions in substance subjecting these four roads to the "liabilities and duties incident by the laws of this state to railroad corporations." Among the duties incident to railroad corporations, and which such corporations are compelled both by the statute and common law to perform, is to give the public equal and reasonable terms, facilities, and accommodations for the transportation of freights, themselves, their agents, and servants, etc. Another incident to railroad corporations in this state is to have their "charges for transportation of passengers and freights" fixed by the railroad commissioners of New Hampshire. These defendants, becoming proprietors of our domestic railroads, are bound by the requirement of our laws, which happens in this instance, so far as concerns equal and reasonable terms, etc., to be also the requirement of the common law. They are bound to give our citizens equal terms, facilities, and accommodations with those which they have granted to the United States & Canada Express Company, which is not only a foreign company, but is a stupendous monopoly of the most notorious character; and if they do not accord to our citizens such terms, then they become transgressors of our laws, and the aggrieved party is not compelled to bring suits and seek a remedy in both states, or to be dragged into the federal courts where the usual delay to an ordinary mortal is death.

The statute which has been violated in this case provides that "all persons shall have equal terms, etc., upon any railroad owned or operated in this state." It was intended to meet the exigency that would exist in case of sale or lease of a New Hampshire road, and place upon the party who becomes proprietor and operates the road in this state the duties of furnishing the same facilities that the original proprietors were bound to give. If the original proprietors had given the United States & Canada Express Company facilities and accommodations through to Boston, they would have been bound to give the plaintiffs equal facilities and accommodations upon reasonable and equal terms through to Boston: what those terms should be would be a question for the New Hampshire tribunals to determine. The common carrier is not obliged to go into the business; but if he does, he must obey the laws. A common carrier of expresses must obey the laws as long as he carries on that business. He holds himself out as a common carrier of expresses. He must carry expresses upon reasonable and equal terms, all proper matters considered. The Boston & Lowell Railroad are common carriers of expresses from Keene to Boston. They hold themselves out as such. They act in that arena. They not only carried express matter for the United States & Canada Express Company, but they also carried express matter for the plaintiffs. The plaintiffs became expressmen by the consent and recognition of the Boston & Lowell Railroad. They wanted increased facilities; they wanted equal and reasonable terms. This reasonable request did not suit the United States &

Canada Express Company: it would interfere with the monopoly they had established and wanted to perpetuate. They objected to the Boston & Lowell Railroad's performing their duties. The Boston & Lowell Railroad became the willing tool and ally of the United States & Canada Express Company. The conspiracy was consummated, and the plaintiffs turned out.

We contend, that when the Boston & Lowell Railroad reach out from Massachusetts and voluntarily take on New Hampshire corporations, and assume the entire control over them, they do something more than merely to agree to take freight and passengers from New Hampshire and carry it and them to the line of Massachusetts. They cannot form this continuous line and control its breath and vitals, and then say to the New Hampshire public, "You may fix a rate for transportation of passengers and freight to the line of your state and no farther, and what you cut us down before we get to the Massachusetts line we will add on after we reach it," and thus defy and nullify the statute and common law requiring reasonable and equal rates for service performed.

BLODGETT, J. The primary question raised by the demurrer is, whether New Hampshire has conferred upon its board of railroad commissioners authority to regulate charges for transportation on railroads without its territorial limits; for if it has not, no other question arises in this case. The answer turns upon the construction of *s.* 4, *c.* 101, Laws of 1883, because the authority of the commissioners is derived from the last clause in that section, which reads as follows: "It shall be the duty of said board to fix tables of maximum charges for the transportation of passengers and freights upon the several railroads operating within this state, and shall change the same from time to time, as in the judgment of said board the public good may require." That is to say, in the apparent exercise of the legislative power of requiring the reasonable compensation of persons engaged in the public service to be established in judicial proceedings (*State* v. *Express Co.*, 60 N. H. 219, 261), it is made the duty of the commissioners to fix a tariff of fares and freights upon the several railroads which are in operation within this state, and to this extent power is conferred upon them. But there is no rule of statutory construction by which it can fairly be inferred that the legislative purpose was to invest the commissioners with power to establish rates of transportation beyond the territorial boundaries of this state.

The intention of the legislature, which is the object to be attained, is to be ascertained by their language, unless it is ambiguous: where there is no ambiguity there is no room for construction. The plain meaning of words cannot be departed from in search of an unexpressed and unimplied intention; therefore, in order to find that the legislature intended to authorize the commissioners to fix prices beyond the state line, their language must

say so, either directly, or by distinct implication.    But here it does neither, for there is no obscurity whatever in the terms of the statute, and so the legislative intent must be taken as expressed in the words the legislature have used, the fair and natural import of which is, that the statute was intended to have a local operation merely.    Such, too, is the legal presumption, and such, also, it would be, even though the language were susceptible of a different meaning, because, as a consequence of the equality and sovereignty of states in respect to each other, the laws of a state must presumptively be taken as intended for the government only of persons and things within its territory ; and consequently the operation of a law is limited to the state by which it was enacted, unless the intent to give it a more extended operation is clearly indicated.

If, therefore, the statute in question is construed according to the legislative intent, as expressed in the enactment itself, or according to the general presumption that statutes are not intended to have any extra-territorial effect, the reasonable and legitimate conclusion is, that the legislature intended to authorize the commissioners to regulate the rates for transportation upon the railroads within this state only.    And if the obvious consequences of giving the statute extra-territorial force are considered, as they properly may be on the question of legislative purpose, the conclusion would seem to be irresistible.

The result of these views is, that the demurrer must be sustained as to so much of the sixth count in the plaintiff's declaration as is based on the commissioners' decision fixing the price of service to be rendered in Massachusetts.    If there are any averments in the count aside from such decision which constitute a good cause of action, they cannot be joined with the averment of the decision, and the whole count should be rejected.    The issues should not be confused by so extended and prejudicial a statement of irrelevant matter.

*Demurrer sustained.*

All concurred.