GEO. T. BEASLEY, Sheriff of Anne Arundel County, *vs.* WEEMS RIDOUT et al., Visitors to the Jail, Etc.

*Allegations of Petition for Mandamus Must be Proved—Sheriffs—Constitutional Law—Legislature May Take from Sheriff Custody of Jail—Appointment of Board of Visitors of Jail by Judges a Non-Judicial Function and Board so Appointed Not Entitled to Mandamus.*

Before issuing the prerogative writ of *mandamus* the Court must be satisfied that the allegations of the petition therefor are true, and a demurrer to the petition does not establish the facts alleged. But when the trial Court states in its opinion that at the hearing the questions of fact at issue were waived or admitted, it will be considered that the allegations of the petition were established.

Constitution, Art. 4, sec. 44, provides for the election of a Sheriff in each county of the State, and directs that he shall "exercise such powers and perform such duties as now are or may hereafter be fixed by law." At common law the Sheriffs were entitled to the custody of the jails and the care of prisoners therein. *Held,* that under the Constitution the Legislature has the power to change or abridge the rights and duties of a Sheriff, who is a mere ministerial officer, and that an Act taking from a Sheriff the control and supervision of a county jail and vesting the same in a properly appointed Board of Visitors would be constitutional.

The Act of 1901, ch. 15, provided that the control and supervision of the jail of Anne Arundel County and of the prisoners therein should be taken from the Sheriff of the county and committed to a Board of Visitors who should appoint a warden, etc. The Act provided for the appointment of three visitors by the Judges of the Circuit, who together with the State's Attorney for the county should appoint a physician and that these five persons should constitute the board. *Held,* that the appointment of Visitors by the Judges is a non-judicial function, and the provision of the Act requiring such appointment to be made is unconstitutional because in violation of the Declaration of Rights, Art. 8, ordaining that no person exercising the functions of a legislative, executive or judicial department shall assume or discharge functions of another department, and that consequently a Board of Visitors appointed by the Judges of the Circuit under the Act of 1901, is not entitled to a *mandamus* compelling the Sheriff to surrender to them the custody of the jail.

Appeal from an order of the Circuit Court for Anne Arundel County (REVELL, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*E. C. Gantt,* for the appellant.

1. There was no sufficient proof of the allegations of the petition. The Act of 1901, ch. 15, provides that the Judges of the Fifth Judicial Circuit shall appoint three persons, who with the State's Attorney and physician elected by them shall constitute the Visitors to the jail. The second section of the Act provides that the three persons, so appointed, with the State's Attorney of Anne Arundel County, shall meet, organize and shall elect one physician, one warden, one watchman, etc. Sec. 5, provides that the physician, warden and watchman shall each qualify by taking the usual oath. And that the warden and watchman shall each give bond of one thousand dollars. Sec. 6 provides that the warden shall take charge of the prison and prisoners in the jail.

The relators allege in their petition that they had elected a physician to the jail as required by the Act, of which election there is no proof offered and the qualification of Dr. Wm. S. Welch is merely an assumption of his having been duly elected. And having so effected organization they proceeded to elect a warden, night watchman and other officers. There is no proof offered of the election of a warden and watchman, or of the qualification of any person as such, which is required by the Act, nor is there any allegation in the petition that a warden or watchman had qualified by giving bond and taking the oath of office. Under the Act (section 6), " the warden of said jail " shall take charge of said prison and prisoners therein. It is manifest that, under the Act, it was to such warden (duly elected and properly qualified), that the surrender of the jail should be demanded by the relators. And there is nothing in the proceedings " to satisfy the mind of the Court " that the allegation of the petition that the respondent

" *refused to turn over to the said board and the officers duly elected and qualified by said board the custody of the said jail building and of the prisoners therein or thereto committed.*"

The facts above set forth in detail are alleged generally in the answer of the respondents and are admitted by the demurrer. *Legg* v. *Mayor, &c., of Annapolis*, 42 Md. 203.

2. The office of Sheriff is a constitutional office and an elective office. The Constitutions since 1776 have all provided for the election of a Sheriff by the people. When the framers of the Constitution of 1776 provided that there should be elected by the people a Sheriff in each county without prescribing in express words the duties and functions of the office, they must have intended that the designation of the office *eo nomine* should carry with it all essential powers and functions appertaining to it at common law.

From the earliest period of the history of England the Sheriff possessed certain essential powers and duties of office, namely: Service of process : Execution of process and making execution, and the keeping of the peace. The Sheriff had by virtue of his office the custody of all prisons taken by virtue of any precept or authority and had the care, custody and keeping of the county jail. By 14 *Edward III*, Stat. 1, ch. 10, passed A. D., 1340 of force in this State it is enacted "Item in the right of the gaols which were wont to be in ward of the Sheriffs and annexed to their bailiwicks, it is assented and accorded that they shall be rejoined to the Sheriffs and the Sheriffs shall have the custody of the same gaols as before this time they were wont to have." *Alexander*, Brit. Stats, 169.

That the common law acknowledged this custody of the jails as a function of the office of Sheriff. See *Coke on Littleton*, 167 b. n. 7; 2 *Hawk*, P. C. 182-184; 1 *Hale*, P. C. 585-597; 2 *Hale*, P. C. 69-410; 1 *Blackstone*, 344; *Bacon's Ab.*, vol. 4, tit. Sheriff, 430-444; *Burns Justice*, vol. 5, tit. Sheriff, 234; *Viner's Ab.*, tit. "Gaols;" *Impey's Sheriff*, 2; *Murfree Sheriffs*, 251, 40-41.

The Constitution being silent as to the functions and duties

appertaining to the office of Sheriff, acknowledged by it as an office, it cannot in reason be assumed that the office of Sheriff has not some distinct character, different from other constitutional offices. In the same manner as other constitutional offices, have distinctive functions pertaining to each and char-. acteristic of each, independent of the absence of any particular designation of the respective functions by the Constitution.

And to ascertain what are the fundamental characteristics of the office of Sheriff, or other office, where the Constitution does not define them specifically, we are relegated to the common law to find out what the framers of the Constitution meant by designating the office of Sheriff as a necessary office in the machinery of government. And what the name. of the office meant, which the people reserved to themselves the right to fill by popular election.

The conclusion is irresistible that there are certain functions characteristic of the office of Sheriff and that it was not the purpose of the framers of the Constitution to create or recognize an office with no fundamental qualities, duties or. powers. Admitting that there are such inherent functions of the office as defined by the common law, it is not within the power of the Legislature to take away from the Sheriff the trust reposed in him by the people and transfer them or either of them to some other authority by it created. If the Legislature has the power to take away from the Sheriff one function of his office, it can take away all, and transfer them to other recognized officers or to such authority as it might see fit to create, thus strip the office of Sheriff, elected by the people, of all powers, duties and functions belonging to that office. *Warner* v. *People*, 2 Denio, 272; *McEwan* v. *Keeler*, 29 Hun. 175; *State* v. *Brunst*, 26 Wis.. 412; *Aller* v. *Wayne Co.*, 43 Mich. 76; *Virtue, Sheriff* v. *Freeholders Essex Co.*, 50 Atl. Rep. 360.

3. The contention of the appellant is not weakened, nor is the reasoning of the authorities cited above. of any less force in supporting the underlying principles involved,. because the Constitution of 1867, Art. 4, sec. 44, provides that the Sheriff

"shall exercise such powers and perform such duties as now or may hereafter be fixed by law." The same provisions are made to apply to Coroners, Elisors and Notaries Public in the succeeding section. . And to Justices of the Peace in section 42, and in a number of other officers mentioned in the Constitution. But it would hardly be contended for that the Legislature could transfer from the Sheriff to the coroners the duties of serving process from the Courts, or levying and making execution.

Art. 4, sec. 20, provides that the Circuit Courts shall have and exercise all the powers, authority and jurisdiction which the present Circuit Courts of this State now have and exercise *or which may hereafter be prescribed by law.* Can the Legislature, under this provision, give to the Circuit Courts the authority and power to appoint a bailiff or other irresponsible person to serve process of the Court or to execute its judgments? These duties pertain to office of Sheriff, and are ascertained and designated as such by the common law. But not any more clearly defined as functions of the office of Sheriff than is the custody of the jail and prisoners therein, both are ascertained and derived from the same source. By the Act of 1901, these powers and duties are taken from the office of Sheriff and placed in the hands of the Judges of the Circuit Court.

4. The power of the Legislature to impose other duties on the Sheriff than such as strictly pertain to his office has been decided by this Court in the case of *The Mayor, &c.,* v. *Board of Police,* 15 Md. 376. The Chief Justice says in his opinion: "There is nothing to prohibit the Legislature from adding to or diminishing his duties, *provided those added be not in conflict with his office as Sheriff.*" The necessary implication follows that the Legislature can not take away from the Sheriff any powers or duties in conflict with the inherent functions of his office. Or in effect abolish the office by transferring its legitimate functions to some appointing power.

*J. Wirt Randall* and *Daniel R. Randall,* for the appellees.

The appellant's contention rests upon the hypothesis that

the office of Sheriff, as it exists today in Maryland under the Constitution, is clothed practically with all the powers and prerogatives of that office under the common law of England at the date of the Revolution and before. That among such prerogatives, he claims, was that of the care and custody of persons confined in the county jail, and the care of the jail building itself. That such being the common law right, not altered or modified by the Constitutions since adopted, no Act of Assembly could deprive the Sheriff of these ancient rights, and what to him is equally important, their emoluments ; and hence that the Acts of 1901 are unconstitutional.

The New York, Wisconsin and New Jersey cases quoted in support of the appellant's contention are possibly good law in those States where the duties of the Sheriff's office are not prescribed or limited by the Constitution, but exceptions even to this rule are frequent. Article 10 of the New York State Constitution of 1894, Article 6, of the Wisconsin Constitution of 1848 and Article 7 of the Constitution of New Jersey, simply provide for an election of Sheriff by the people and regulate his eligibility to re-election, amount of bond, etc.; but in each case the Constitution is silent as to the duties pertaining to the Sheriff's office, or the rights of that officer derived from the common law of England. Yet in New Jersey under an Act of 1857 the care of the jails in Hudson and Essex counties was vested in a board of chosen freeholders, and the Supreme Court declared such Act to be constitutional. *Daubman* v. *Smith*, 47 N. J. L. 200 ; *Stiles* v. *Union County*, 50 N. J. L. 9.

On the contrary in Maryland, California, Florida, Louisiana, Oregon and West Virginia, the Constitutions specifically provide that the Sheriff's powers and duties shall be those that the supreme power of the State, vested in the Legislature, shall enact. In Georgia, where the Constitution is silent as to this officer's duties, the Supreme Court declared in the case of the *State* v. *Dews*, R. M. Charlton, 433, that the adoption of the word "Sheriff" into the Constitution in no sense fixed and established as the fundamental law the duties of the office enjoyed under the common law of England.

The Supreme Court of California has gone so far as to declare that in the United States generally the office of Sheriff is purely a ministerial one, without any of the judicial and few of the executive functions guaranteed under the common law. *Merrill* v. *Gorman*, 6 Cal. 41 ; *Attorney-General* v. *Squires*, 14 Cal. 15. In Tennessee the Supreme Court declared that the care of the jail and its prisoners was a common law prerogative of the Sheriff's office which "cannot be abridged or given to another *unless the purpose so to do be clearly expressed by the Legislature.*" *Felts, Sheriff*, v. *Mayor, &c., of Memphis*, 2 Head (Tenn.) 659.

In Maryland our Court of Appeals has declared in no uncertain terms that the Legislature may add to or diminish the duties of the office of sheriff at its will. *Mayor, etc., of Balto.* v. *State, etc.*, 15 Md. 488; *People* v. *Draper*, 25 Barbour, 374.

The language of Art. 4, sec. 44 of the Constitution, can have but one interpretation ; namely, that the Legislature may abridge entirely, do away with or add to the duties of sheriff. That the office of sheriff in Maryland has been stripped of the many functions and prerogatives of the common law can not be gainsaid, and the Acts of Assembly yearly teem with statutory provisions adding to or diminishing the duties of that office, as well as its emoluments.

Today he possesses but one quasi-judicial function in the State, that of presiding at condemnation proceedings, and this last prerogative is to be taken from him, if a bill recently introduced in the present General Assembly passes. The care of prisoners and the jail *was* a common law duty of the office, but our General Assembly has never hesitated to deprive him of this, when the will of the people, expressed through their representatives, demanded such a change. This was notably so in Baltimore City, where for many years past the care of the jail and its inmates has been a thing apart from the Sheriff's office and vested in another constitutional officer. So in Baltimore county, by virtue of chapter 224, of the Acts of 1826, for many years in operation, though now repealed, a Board of Visitors to the county jail was appointed by the Governor,

whose duties were nearly identical with those of the appellees
in this case and the administration of the jail was exclusively
committed to their care.

Many States whose Constitutions are silent as to the special
functions and duties of the office of Sheriff have passed special
Acts vesting in that official the care of the county jail and its
inmates.   19 *A. & E. Ency. of Law*, 90.

Acts of Assembly will be held to be constitutional unless
so manifestly in conflict with some provision of the Constitu-
tion of the State that no discretion is left in the Court but to
decide otherwise.  *Mayor, etc.,* v. *State*, 15 Md. 376; *Davis* v.
*Helbig*, 27 Md. 452 ;  *County Coms., etc.,* v. *Meekins*, 50 Md.
281; *Jackson* v. *State*, 87 Md. 191.

PEARCE, J., delivered the opinion of the Court.

By ch. 15 of the Acts 1901, the charge, control, and super-
vision of the Anne Arundel County jail, and of all persons
committed thereto, was taken from the Sheriff of the county,
and was vested in a Board of Visitors provided by that Act.
The immediate care and custody of the jail, and of all the
prisoners is committed to a warden appointed by, and subject
to the direction of, said Visitors, but with the same powers in
that regard as were possessed by the Sheriff, and with the
same liability for escapes or other neglect of duty.

Upon the appointment of said Visitors, demand was made
by them upon the Sheriff for the possession and custody of the
jail and of the prisoners therein, which was refused by the
Sheriff, who alleges that the Act of Assembly in question is
unconstitutional and void.   Thereupon the Visitors applied
for a *mandamus* commanding the Sheriff to deliver possession,
which being ordered by the Circuit Court, the Sheriff has
brought this appeal.

The proceedings under the petition for the *mandamus* have
not been conducted in the manner prescribed by the Code, no
proof having been offered to sustain its allegations, although
the Judge must be satisfied these allegations are founded in
truth, whether the petition is heard on general demurrer by

the respondent, or answer denying the allegations of the petition, or *ex parte* for want of answer. *Legg* v. *Mayor of Annapolis*, 42 Md. 223; *Sudler* v. *Lankford*, 82 Md. 148.

The respondents pleading is somewhat equivocal in form, but if it be regarded as an answer, it does not admit the facts alleged, and if it be regarded as a demurrer, or as in part an answer and in part a demurrer, the facts are not thereby admitted, that not being the effect of a demurrer in a proceeding for a prerogative writ like *mandamus.* *Sudler* v. *Lankford, supra,* 149.

Subsequently certificates of the qualifications of the Visitors were filed, together with an agreement of counsel that all questions of law and fact should be submitted to the Court without the intervention of a jury. Assuming for the present purposes that the judges were in the discharge of a judicial function, they would take judicial notice of their own appointment of three Visitors in compliance with the Act of Assembly, but the agreement mentioned could not supply proof of their meeting with the State's attorney as the fourth member; their organization as required by the Act, and the election of Dr. Welch as the physician and the fifth member, all of which was indispensable to a legal demand upon the Sheriff but none of which was admitted by the pleading. In the opinion of the Court however, it is stated that "at the hearing the questions of fact at issue were waived or admitted," and we think this statement by the Court should be given the effect of an admission of record, and as equivalent to full proof.

Whether an Act of Assembly is a valid exercise of legislative power, is, in all cases, a question, not of expediency or policy, but of power alone, as determined by the Constitution. "Questions of expediency, or utility, are matters for the *exclusive* decision of the *Legislature,* and cannot be regarded by the judiciary in testing the power to pass laws." There is a presumption, moreover, that every Act of the Legislature is within its power, and before any Act should be declared unconstitutional, its repugnancy to the provisions, or necessary implications of the Constitution should be manifest and free

from all reasonable doubt. If its character in this regard be questionable, then comity and a proper respect for a co-ordinate branch of the government, should determine the matter in favor of the action of the latter. These are the rules laid down by our predecessors in *Mayor of Balto.* v. *State, ex rel., Board of Police of Balto.*, 15 Md. 376, and by which we must be guided in our consideration of this case.

The sole ground of objection to the validity of the Act in question made in the appellant's brief, and the only one argued at the hearing, was that the office of Sheriff is a constitutional office ; that the Sheriff was an officer of the common law, and that when the Constitution of 1776 provided for the election by the people of a Sheriff for each county, without prescrib-ing in express terms the powers and duties of the office, it must have been intended that the office should carry with it *eo nomine*, all the duties, powers and privileges appertaining to it at common law ; and that as the custody of the county jail, and the care of the prisoners therein, was the clear common law right of the Sheriff, the Legislature could not destroy or abridge that right, and confer it, in whole or in part, upon any other person designated by it—or by its delegated authority.

There is certainly high authority for this contention where the Constitution is silent as to the powers and duties of the office.

In *Sewell on the Law of Sheriff*, page 7 (in 46 Law Library), it is said : "The custody of the gaols of counties is inseparable from the Sheriff; and therefore if the King grants the custody of such gaol to another, it is void ; for the Sheriff, being the immediate officer of the King's Courts, and answerable for escapes, and subject to amercements, ought to have the ap-pointment of such gaolers for whom he will answer. And he cannot be restrained himself in any part of his own power by the King."

In *Murfree on Sheriffs*, sec. 41, it is said : "When the office of Sheriff is a constitutional office in any State, recognized and designated, *eo nomine*, by the Constitution, as a part of the machinery of the State government, the Sheriff, *ex vi termini*,

must possess in that State, all the substantial powers appertaining to the office by common law.　It is competent for the State Legislature to impose upon him new duties growing out of public policy or convenience, but it cannot strip him of his time honored and common law functions, and devolve them upon the incumbents of other offices created by legislative authority;" though the author admits that "it would be competent for the British Parliament to modify, limit or enlarge the rights and duties of Sheriffs within that kingdom, or to abolish the office altogether, and distribute its functions among other officers ; and that a like power is no doubt vested in constitutional conventions of the several American States, by which the constitutions and organic laws of those States are from time to time changed and amended."

The views thus expressed are sustained by Courts of high authority.

In New York the Constitution of 1821 provided that clerks of counties, including the city and county of New York, should be chosen by the people, but made no reference to their powers and duties.　The Act of 1843 provided that the clerk of the Court of Common Pleas for the city and county of New York should be appointed by the Court, and should act as county clerk.　The question arose in *Warner* v. *People*, 2 Denio, 272, whether the Act was constitutional, and it was held that it was not.

JUDGE BRONSON said : " In effect, the statute divides the office of the clerk of the city and county of New York into two parts, and as to the largest share in point of duty and emolument, takes the choice of the officer from the electors of the county, and gives the appointment to the Court.　If this can be rightfully done, I do not see any security for the rest of the office."　CHANCELLOR WALWORTH said : " When the Legislature assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another who is to be appointed in a different manner, and to hold the office by a different tenure than that which is provided by the Constitution, it is not a legitimate exercise of the

right to regulate the duties or emoluments of the office, but an infringement upon the constitutional mode of appointment."

In *People* v. *Albertson*, 55 N. Y. 57, the Court of Appeals said : " The Constitution cannot be evaded by a change in the name of an office, nor can an office be divided and the duties assigned to two or more officers under different names, and the appointment to the offices made in any manner, except as authorized by the Constitution." The Constitution of New York of 1844, then in force, did not mention the powers and duties of Sheriff, and the Act of 1882 provided that the Albany County Penitentiary should thereafter be the county jail, and required the Sheriff to remove the prisoners from the jail to the penitentiary, and made the superintendent the jailer, requiring him to give bond to the Sheriff for the discharge of the duties as jailer, but did not release the Sheriff from liability for escapes or from amercements. This Act was drawn in question in *People* v. *Keeler*, 29 Hun. 175, and was held unconstitutional, because it deprived the Sheriff of common law powers and duties pertaining to his office, and violated the provision requiring the Sheriff to be elected by the people.

The same was held in Wisconsin as to a Sheriff, in *State* v. *Brunst*, 26 Wis. 412, for the reasons stated in *Warner* v. *People*, and *People* v. *Keeler*, *supra;* and as to a constable, in *Allor* v. *Wayne County*, 43 Mich. 76, for analogous reasons.

All those cases were reviewed in the recent case of *Virtue* v. *Board of Free Holders of Essex County* (*N. J.*), 50 At. Rep. 360, and the principles there announced were approved and adopted, and an Act transferring the custody of the Essex County Jail to the Board of Free Holders, was held unconstitutional, notwithstanding it had been assumed to be constitutional in this regard, in several other decisions, where this particular objection had not been raised.

In all of these cases it will be seen that the Constitutions of the several States made no reference whatever to the powers and duties of the office, while in Maryland, the Constitution of 1864 introduced the language, retained in the present Constitution, which after requiring the election of a Sheriff for each

county every two years, directs that "he shall exercise such powers and perform such duties as are now or may hereafter be fixed by law."

But before entering upon the consideration of the effect of this change in the language of the Constitution, there are two cases which should be noticed, taking the opposite view from those we have already cited. The first of these is *Hoke* v. *Henderson*, 4 Devereaux, 1, decided in 1833 by the Supreme Court of North Carolina when that Court was presided over by CHIEF JUSTICE RUFFIN, and in which he delivered an opinion of great ability and learning. It was there held, contrary to the established rule at the present day, and to the current and weight of authority at that time, that an office is the property of the incumbent. The office in question was that of Clerk of the Superior Court of Lincoln County, an office recognized in the Constitution, but not having the tenure prescribed thereby. In 1806, Superior Courts were established by law, and the Judges were authorized to appoint clerks to hold during good behavior. Hoke held under such an appointment. The Act of 1832 provided that these clerks should be elected, and Henderson was returned elected under the Act, but was denied the office by the Court. The purpose of referring to the case, is to show that while holding Hoke could not be so ousted, it was also held that "prescribing the *duties* of officers, their qualifications, their fees, their *powers*, and the consequences of a breach of duty, including punishment and removal, are all political regulations and fall within the legislative province. * * * * That the creation of an office is a question of political expediency, and so are the duties, perquisites and punishment of the officer. * * * By consequence they are the subjects of legislative regulation. If the Legislature increase his duties and responsibilities, or diminish his emoluments, he must submit, except in those cases where the Constitution has itself declared the duty and fixed the compensation, because in the nature of things, these are the subjects of such regulations as the general welfare may from time to time dictate, and the office must therefore have been conferred and accepted subject to such regulation."

The second case is *The State* v. *Dews*, R. M. Charlton's Rep. 397, in which an exhaustive and able opinion was delivered, holding that a Sheriff in Georgia was entirely a ministerial officer whose province is to execute duties prescribed by law, and which duties may be contracted or enlarged at the will of the Legislature. The Constitution was silent as to the powers and duties of the Sheriff, but the custody of the Chatham County Jail was vested by the Act of 1822, in the Sheriff. In 1834 an Act was passed appointing the Mayor and Aldermen of Savannah, Commissioners of the jail, with power to appoint a jailer. The Sheriff refused to surrender possession, which the Court ordered in proceedings for *mandamus*. Speaking of the rights and duties of the office of Sheriff, the Court said: "Those duties, which are the mere creatures of the law, resulting from the legislative sense of the public interests, are not his private concern, and may be modified, increased, or diminished at the pleasure of those in whom the power of legislation resides; and since such increase or diminution does not interfere with his title to the office, nor trench upon his right to execute its duties, no injury is done him. If he sustains loss, or incurs a burden, in consequence of such alteration of its duties, it results from the application of those principles by which the public good is to be consulted and promoted, and is *damnum absque injuria*. The Sheriff, as relates to the jail, is a ministerial officer, and as such has no power independent of his duties. * * * The rights of a ministerial officer flow from his duties, not his duties from his rights."

It is not necessary to say how far our conclusions would be influenced by these two cases, if they had never been considered by this Court. The North Carolina case, in so far as it declared the power to enlarge or diminish the powers or duties of public officers, was adopted in the Georgia case which dealt directly with the identical powers and duties of the Sheriff involved here, and the latter case was emphatically approved by our predecessors in *Mayor of Balto.* v. *Board of Police*, 15 Md. 376. The opinion of the Court in that case

was delivered by JUDGE TUCK, a very learned and careful Judge. One of the objections made to the validity of the Act establishing the Board of Police as now substantially organized, was that it infringed upon the constitutional powers of the Sheriff. He disposed of this objection very briefly saying "the supposed improper interference with the duties of the Sheriff would not vitiate the law if the point was sustained." A separate concurring opinion however was delivered by CHIEF JUDGE LE GRAND, in which he treated that branch of the case with his accustomed force and clearness, saying : "The 20th section of the 4th Article of the Constitution, which mentions the office, and provides for filling it, does not specify or describe the powers or duties of the Sheriff. These are left to the common law *and the Acts of Assembly.* The charge of the other conservators of the peace, is nowhere in the Constitution given to him. There is nothing to prohibit the Legislature from adding to or diminishing his duties, provided those added be not in conflict with his office as Sheriff. *And what was said in Georgia of the office of Sheriff in that State, is equally applicable to that officer and his duties in Maryland.* In the case of *State* v. *Dews,* R. M. Charlton's Rep. 404, it was said by the Court : "It is true that the appointment of Sheriff confers upon him the right to execute the duties of the office, but from the nature of the office those duties may be changed by law. It is, in this State, a purely ministerial office, whose function and province it is to execute duties prescribed by law. From the very nature of such an office its powers are the results of its duties. In reference to it, the maxim is strictly true, that power and duty are correlative, but its powers do not extend beyond, they are the mere consequence of its duties. The holder of such office has power only to execute its duties, and because such duties are prescribed to and imposed upon him. The idea that the duties of a ministerial officer cannot be changed will involve an inversion of the order of things and be a flagrant absurdity ; it would invest him, who is a mere minister and servant, with authority to limit the power

of, and exercise an overmastering control over, those from whom he is to receive the law. Those duties are the mere creatures of law, and are, in their very essence, changeable by the law-making power; and his rights which are derivative only from those duties, cannot prevent their creation or change. His rights, which are the consequence of his duties, cannot intercept the authority of the Legislature to act on those duties." That this concurring opinion of the Chief Justice carries with it the same authority upon this point, as if he had pronounced the opinion of the Court, is made clear by the language of JUDGE TUCK, who immediately follows the passage we have cited from his opinion, with these words: "The views presented in the opinion of the Chief Justice, as well as that of the Court below show that these objections (the interference with the Sheriff's duties) are not well taken."

The views thus expressed are in accord with those of JUDGE STORY, who said in *Dartmouth College* v. *Woodward,* 4 Wheaton, 693, "The State Legislatures have power to enlarge, repeal, and limit the authorities of public officers in their official capacities, in all cases where the Constitutions of the States respectively do not prohibit them; and for the very reason, among others, that there is no express or implied contract that they shall always during their continuance in office, exercise such authorities. They are to exercise them only during the good pleasure of the Legislature."

Notwithstanding, then our sincere respect for the authority of those Courts which hold otherwise, and the strong presentation of the reasons by which they are controlled, we should be compelled to hesitate long before we could decline to follow the adjudication of the principle involved made by this Court in 15 Md., *supra,* even if our Constitution stood now as it then stood. But that is not the situation here. Under the present Constitution, the powers and duties which the Sheriff is to exercise and perform are not such *alone* as were then determined by the common law, but were those—save and except as then or thereafter fixed by law, whether the effect of such law was to repeal, enlarge, or limit those powers. The lan-

guage could not have been more explicit or plainer in meaning, if the Constitution said " The powers and duties of Sheriffs shall be such as now are or may hereafter be conferred and prescribed by legislative enactment." The present language first appears in the Constitution of 1864, framed only four years after the decision in 15 Md., *supra*, and it may be reasonably supposed that it was introduced to effectually set at rest the question raised in that case, though reference to the debates of that convention throw no light on the matter.

Long before that time however it appears from an examination of the Acts of the General Assembly, that the system now proposed for Anne Arundel County was in force in the State. Chapter 284 of 1826 created a Board of Visitors for the jail of Baltimore County with authority to appoint a warden of the jail. The preamble of that Act set forth that " by reason of multiplicity of business the Sheriff cannot pay that personal attention to the safety of prisoners which is desirable, and for this cause, and for reasons of economy, this Act is enacted." The passage of such an Act serves to show that the legislators of that day who were usually men of affairs, and certainly not less regardful of constitutional limitations than those of the present generation, believed that it was within their rightful power. This Act continued in force until 1832, when by ch. 58 of that year, the Governor was authorized to appoint a Board of Visitors of the jail of Baltimore City and county with authority to appoint a warden to whom the custody of the jail of said city and county and the prisoners therein was committed, and the Act of 1826 was then repealed. Ever since that time, the jail of Baltimore City has been in the custody of such a board and of a warden appointed by them. Almost all the sections of Art. 4 of the Code of Public Local Laws of 1860, relating to the jail of Baltimore City are codifications of the provisions of the above Acts of 1826 and 1832, and these were amended and re-enacted in the successive Codes of the State, and were again re-enacted in ch. 123 of 1898, known as the New Charter of Baltimore. The continuance of this Act upon the statute book unquestioned for nearly forty years

prior to the Constitution of 1864, and unquestioned for nearly forty years since that date is most significant and creates a strong presumption in favor of its validity based upon the acquiescence of the people, of the numerous Sheriffs who have been immediately affected thereby, and of the several departments of government, in the system which it established.   We are not to be understood as intimating that an Act clearly transcending the legislative power can be rendered constitutional and valid by subsequent acquiescence, no matter for how great a period, but in a doubtful case, long and willing acquiescence might serve to turn the scale.  JUDGE COOLEY says in his *Constitutional Limitations*, 4 ed. 204: "The rule of law upon this subject appears to be, that, except that where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operates according to natural justice or not in any particular case."   And in *People* v. *Draper*, 15 N. Y. 543, cited in 15 Md. *supra*, the Court said : " Plenary power in a Legislature for all purposes of civil government is the rule."   Both these statements of the law are cited with approval in *Trustees of Catholic Cathedral Church* v. *Manning*, 72 Md. 122, and whatever our view may be, or that taken by the public of the expediency of extending to the counties of the State, the system in force in the city of Baltimore, we can not doubt that it is our duty as a Court to sustain this law against the objection urged in this case.

There is, however, an objection to the validity of this Act, which we are not at liberty to pass *sub silentio* because in our judgment it is an insuperable objection, and that is the provision that three of these Visitors shall be appointed by the Judges of the Fifth Judicial Circuit, thus converting the Court, for the purposes of that Act, into an appointing agency.  No argument is needed to show that the duty thus sought to be imposed is not judicial, and that in making these appointments the Judges were not performing a judicial function.   In the very recent case of *Robey* v. *Prince George's County*, 92 Md. 150, it was held that a statute which requires Judges of the Circuit Courts to approve the accounts of certain officers be-

fore payment of such accounts by the County Commissioners, imposes upon the Judges a duty not judicial in its nature and is unconstitutional under the Declaration of Rights, Art. 8, which ordains "that the legislative, executive and judicial powers ought to be forever separate and distinct from each other, and no person exercising the functions of one of said departments, shall assume or discharge the other." In that case, it was said, "The mere fact that a Judge is called on by statute to execute a certain function, does not make it a judicial function. . Its character is dependent on its qualities, not on the mere accident as to the person designated to do it. * * * If the Act is judicial when conferred on a Judge, and non-judicial when not conferred on him, the same Act would be in one county judicial, whilst in an adjoining county it would not be." And, as was pointed out in that case, so here, "the statute contains intrinsic evidence that the duty which it imposes on the Judges is not judicial." It requires the appointments to be made by "the Judges of the Fifth Judicial Circuit," which requires that at least a majority, if not all of them, must unite in making the appointments. "Were this duty judicial, one Judge would have under the Constitution, as much authority to discharge it as a majority (or all) would possess, because sec. 21, Art. 4 of the Constitution provides that one Judge in each circuit shall constitute a quorum for the transaction of any business." And our decisions, which precede that case, are clear that Judges cannot be compelled to perform services not of a judicial nature. *State v. Chase*, 5 H. & J. 298; *McCrea v. Roberts*, 89 Md. 251.

Courts are naturally and properly reluctant to disregard the wishes of the Legislature expressed in the form of laws, and doubtless the Judges who made these appointments were influenced by this feeling. But there has always been among the Judges of this State a grave doubt as to the validity of similar appointments under the law which formerly required the appointment of School Commissioners to be made by them, and some of these Judges refused to unite in making such appointments in their circuits, because they regarded the

power of appointment as a non-judicial, and therefore as a prohibited power.     Officers so appointed, when once inducted into power, are doubtless regarded as *de facto* officers, and their official acts upheld *pro bono publico.* Their title even may be recognized in proceedings against indifferent parties, necessary to the conduct of the office, but we are aware of no case in which the title of officers so appointed has been sustained in a proceeding like the present seeking to oust an incumbent, who but for the Act in question, must be conceded to be the lawful incumbent.     The rule of physics is the rule of law, that no stream can rise higher than its source, and an Act which violates a constitutional provision cannot confer valid title upon one whose title is traced to, and must depend upon, the very feature of the Act which renders it obnoxious to that charge.     This Court has said in 15 Md. *supra*, 453, that "when the Court is satisfied that the Legislature has exceeded its authority, we should no more falter in denouncing the Act as void, than we should hesitate in deciding the most unimportant matter within our jurisdiction."

For the reason which we have assigned, the order directing the *mandamus* to issue will be reversed.

> *Order reversed with costs above and*
> *below.*

(Decided March 7th, 1902.)

BOYD, J., dissented on the second proposition in this opinion.