467 A.2d 786

**Charles R. KLINE**

v.

**David D. FULLER.**

**No. 17, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Nov. 8, 1983.

Glen M. Fallin, Ellicott City, with whom was Richard W. Fancher, Baltimore, on brief, for appellant.

Jamie B. Baer, Asst. County Atty. for Charles County, for appellee.

Argued before MOYLAN and WILNER, JJ., and MORTON, JAMES C., Jr., Retired, Specially Assigned Judge.

WILNER, Judge.

In 1970 the General Assembly added a new article (art. 76A) to the Code, entitled "Public Information". The heart

of the new statute was § 2(a), which provided, in relevant part, that, except as otherwise provided by law, "[a]ll public records shall be open for inspection by any person at reasonable times." The term "public records" was defined in § 1(b) as including all records, except those that are privileged or confidential by law, that (1) were made by the State, a political subdivision of the State, or any agency of the State or a subdivision, or (2) were received by any of those entities in connection with the transaction of public business. The statute authorized the exclusion of certain kinds of records from public view and established a procedure for determining whether the inspection of particular records would be permitted.

In 1974, the Charles County delegation succeeded in persuading the Legislature to exempt Charles County from the purview of the public general law (§§ 1 through 5 of art. 76A). By 1974 Md. Laws, ch. 239, the General Assembly enacted the Charles County Freedom of Information Act, which, among other things, (1) provided, in a new § 2(e) to art. 76A (now § 2(b) of that article), that "[i]n Charles County, *except for records kept by officials, agencies or departments of the State of Maryland,* public information shall be regulated by section 6 of this article" (emphasis supplied), and (2) in new § 6, set forth provisions and procedures governing access to public records in Charles County that differed from those stated in the public general law.[1]

Finally, in 1978 and 1982, the public general law was amended in a number of respects. Those amendments, some of which we shall discuss later in this Opinion, did not affect the scope of the public general law or its definition of "public records". Nor did they purport to change the Charles County law.

---

1. The Act also provided, in § 6, that, with certain exceptions, all meetings of county agencies had to be open to the public. Similar open meeting requirements were enacted with respect to the State and most local governments in 1977. *See* 1977 Md.Laws, ch. 863, codified as art. 76A, §§ 7–15.

As presently constituted, the public general law, in § 1A of art. 76A, sets forth a clear legislative policy. It states, in relevant part:

"[A]ll persons are entitled to information regarding the affairs of government and the official acts of those who represent them as public officials and employees. To this end, the provisions of this act *shall be construed in every instance with the view toward public access,* unless an unwarranted invasion of the privacy of a person in interest would result therefrom, *and the minimization of costs and time delays to persons requesting information.*" (Emphasis supplied.)

Section 2(a), in addition to stating the general requirement that "[a]ll public records shall be open for inspection by any person at reasonable times" requires the "official custodian" of public records to make and publish rules regarding the timely inspection and production of such records. Section 3(d) provides that, "upon written request for access to any public record," the custodian must either (1) grant the request and produce the record "immediately or within a reasonable period, not to exceed 30 days as may be required to retrieve the information", or (2) within the thirty-day period, deny the request and notify the applicant of the denial. If the person to whom the application is submitted does not, in fact, have custody or control of the record, he must, within ten working days, "notify the applicant of this fact and if known, the custodian of the record and the location or possible location thereof." § 3(d)(3).

Finally, for purposes of this appeal, § 5(a) permits an applicant who is denied the right to inspect public records to seek administrative review of that denial if the agency maintaining the record is subject to the Administrative Procedure Act, and, in any case, to seek judicial review. No particular form of judicial review is specified. The law permits the circuit court, upon complaint of the applicant, to order the agency to produce the record (or, conversely, to enjoin the agency from continuing to withhold the record)

and, under certain circumstances, to award damages or attorneys' fees.

In § 6(c) of art. 76A, the Legislature stated for Charles County a public policy similar to, though perhaps more limited than, that stated for the rest of the State in § 1A. Except as otherwise provided by law, "all Charles County official records shall be open to inspection and copying by any citizens having a personal or legal interest in specified records..." and access to those records "shall not be denied to any citizen...."[2] The term "official records" is defined in § 6(b)(2) as "the records pertaining to completed actions or transactions which the groups agencies or organizations, enumerated in (1) of this section, are required by statute to keep and maintain, or reports paid for by public funds." Among the groups "enumerated in (1)" is any board, bureau, commission, or agency of Charles County.

In contrast to the judicial review provisions of the public general law, § 6(g) states:

"Any person denied the rights and privileges conferred by this subtitle may proceed to enforce those rights and privileges *by petition for mandamus or injunction, supported by an affidavit showing good cause,* addressed to the circuit court having jurisdiction of such matters, in the county in which the rights and privileges were denied. The petition shall be heard within seven days from the time it is made." (Emphasis supplied.)

The issue laid before us by the parties in this appeal is which of these laws—the public general law (§§ 1–5) or the public local law for Charles County (§§ 2(b) and 6)—applies with respect to records kept by the sheriff of Charles County but which pertain to matters under the jurisdiction of the county Board of Public Safety.

---

**2.** In light of the latter injunction that access shall not be denied "to any citizen", the limiting language in the first clause, opening the records to citizens "having a personal or legal interest in specified records", is not entirety clear. That is not an issue in this case, however.

## I. *The Sheriff And His Office*

Notwithstanding that he is elected on a county-wide basis and that his jurisdiction *generally* does not extend beyond the county borders, the sheriff of Charles County, like his counterparts in the other twenty-three political subdivisions of the State, is a *State,* not a *county,* officer. *See* 6 Op. Att'y Gen. 427, 430 (1921); 50 Op. Att'y Gen. 346 (1965). His office is created by the State Constitution (Art. IV, § 44); if the office becomes vacant between elections, the vacancy is filled by appointment of the Governor; the sheriff serves process issued by State courts, and indeed may serve it outside of his home county (Md.Code Ann. Courts art., § 2–301(b)); and his salary is determined or provided for by the General Assembly.[3] There can be little doubt that the sheriff is, indeed, an official of the State of Maryland.

Although the sheriff is a State official, his duties and authority are not uniform throughout the State. The Constitution (Art. IV, §§ 44) permits him to "exercise such powers and perform such duties as now are or may hereafter be fixed by law";[4] and, primarily through public local law, the General Assembly has treated the sheriff somewhat differently from county to county. In some counties, the sheriff does little more than serve civil process; in others, including Charles County, the sheriff and his deputies also act as the county police force.

In Charles County, the organization and functions of the sheriff's office are governed by § 378 of the Public Local Laws of Charles County (1969, 1977 Supp.). Subsection (a)

---

**3.** Art. IV, § 44 of the State Constitution provides that the sheriff in each subdivision shall receive the compensation "as may be fixed by law." Sheriffs' salaries are generally provided for in Courts art., § 2–309. For some counties, *including Charles County,* the salary is actually fixed in § 2–309; in some instances, a minimum salary is established, but the local government is empowered to provide more; as to at least one county (Montgomery), the Legislature has authorized the county council to determine the sheriff's salary.

**4.** *See also Beasley v. Ridout,* 94 Md. 641, 52 A. 61 (1902).

of that section provides that the "Office of Sheriff of Charles County" consists of (1) the sheriff and his deputies, as authorized by Courts art., § 2–309, (2) the Board of Public Safety, a three-member body consisting of one county commissioner, one person appointed by the circuit court judge,[5] and one person appointed by the county's legislative delegation, and (3) such other employees as are authorized by law.

Responsibility for the staffing and operation of the "Office of Sheriff" is split between the sheriff and the Board of Public Safety. The board determines the number of deputy sheriffs and actually makes the appointments (§ 378(c)(4)). The sheriff, on the other hand, has

"control and supervision over other members of his office and shall assign the members thereof, to such duties and hours as he may deem necessary, and shall make such rules and regulations for the proper government, discipline, and operation of his office as he may deem best to promote its efficiency." § 378(e).

He may, among other things, "in his discretion, suspend without pay, remove, dismiss, demote or discharge any member of his office" for certain causes. § 378(g). Any person so suspended or removed may appeal to the board, which, after a hearing, may affirm, modify, or repeal the action of the sheriff. *Id. But see* the Law Enforcement Officers' Bill of Rights (Md.Code Ann. art. 27, §§ 727–734D).

Most aspects of personnel administration in the sheriff's office are governed by merit system regulations adopted by the county commissioners, "to which all of the members of the Sheriff's office, except the Sheriff, shall be subject." Under these regulations, the Board of Public Safety is empowered to appoint all merit system personnel in the sheriff's office, to review and decide upon all requests "from

---

**5.** *See,* however, *Beasley v. Ridout, supra,* 94 Md. at 658–60, 52 A. 61, declaring a statute providing for the appointment of executive officials by judges to be in violation of art. 8 of the Maryland Declaration of Rights (separation of powers) and therefore invalid.

the supervisory appointing authority" for promotions and in-grade pay increases, and to hear, investigate and decide grievances presented to the board.

## II. *The Present Controversy*

Charles Kline, the appellant here, is a merit system employee of the sheriff's office. He is a deputy sheriff, having the rank of patrolman first class. Mr. Kline is aggrieved that he has received no promotion since 1977—that he has been a patrolman first class longer than anyone else in the sheriff's office—and has expressed the belief that the sheriff may have "retaliated against him" because of his "reasonabl[e] exercise of his right of free speech." It appears that, at some point, Mr. Kline filed a grievance with the Board of Public Safety, that he actually appeared before that board on one occasion with respect to that grievance, and that, because the board was not then prepared to conduct a hearing, the matter was postponed.

It was apparently in conjunction with that grievance that counsel for Mr. Kline, on June 23, 1982, sent a letter to the sheriff requesting "pursuant to Art. 76A of the *Anno. Code*" permission to inspect and obtain copies of eight categories of documents. In response to that letter, the sheriff permitted counsel to inspect certain of those documents, but failed to produce others. The inspection, and with it the final denial of access to the remaining records requested, occurred on August 3, 1982.[6] On October 28, 1982, appellant commenced this proceeding with a petition for inspection and copying of records. Although he complained about the sheriff's refusal to allow access to three categories of documents, he asked

---

6. The sheriff's position with respect to these documents was actually communicated to Kline on two earlier occasions. According to his petition for inspection (*see infra* ), he was told by the sheriff on June 16, 1982, that "unless ordered by a Court to do so", the sheriff would not disclose at least one category of the requested records (methodology used in the selection of personnel for promotion), and that on July 8, 1982, he was advised that the second category (correspondence between the sheriff and the local Fraternal Order of Police lodge) would not be made available.

the court to order the sheriff to produce only two categories: (1) records "pertaining to the methodology utilized by the Sheriff's Department of Charles County . . . since January 1, 1973, to select personnel for promotion", and (2) records of correspondence between the sheriff and the local lodge of the Fraternal Order of Police.[7] Aside from attorneys' fees and costs, Kline's specific requests were that the court order the sheriff to produce those documents and provide him with a list of those documents asserted to be exempt from disclosure and the basis for the withholding of each such document.

The sheriff responded to Kline's petition with a motion under Md.Rule 323a to dismiss on the grounds that Kline had failed to avail himself of an appropriate administrative remedy (Md.Rule 323a(10)), and that his petition was deficient in that he had failed to file the affidavit required by art. 76A, § 6(g). The sheriff's position was, and remains, that (1) the records sought by Kline deal with personnel administration, (2) such administration is under the control of the Board of Public Safety, which is a county agency, (3) the public local law (*i.e.,* §§ 2(b) and 6)) and not the public general law therefore applies, (4) no request was ever made of the board for any of the records in dispute, and (5) under the public local law, judicial review is not available unless the available administrative remedy is first exhausted.

The Circuit Court for Charles County agreed with the sheriff, concluding that the public local law (§ 6) was the applicable one, and that "there are administrative remedies that are obviously still available and that have not yet been complied with." On that basis, the sheriff's motion was granted and the petition was dismissed.

### III. *Discussion*

■ The court erred in concluding that the public general law was not applicable with respect to Kline's request. As

---

7. The third category of which he complained consisted of certain minutes of a Board of Public Safety meeting. Those minutes were not included in his June 23, 1982, request.

we have noted, the exemption for Charles County stated in § 2(b) of art. 76A does not apply to "records *kept* by officials ... of the State of Maryland...." (Emphasis supplied.) Section 1(b) which defines the "public records" subject to the public general law includes "any paper, correspondence ... or other written document ... that have been made by ... any agency or instrumentality of the State ... or received by them in connection with the transaction of public business."

■ It is clear from these provisions that the applicability of the public general law does not depend in any way upon whether the records in question pertain to matters within the particular official's (or unit's) jurisdiction. If they fall within the definition of "public records" set forth in § 1(b) and are "kept" by a State agency or official, they are subject to the public general law, even if, in the hands of *local* agencies or officials, they may also be subject to the public local law. The public general law looks only to whether the record is a "public record" and, if so, whether it is in the custody of a person subject to that law. If both the record and its custodian are subject to the law, the law applies, and access may be denied only in accordance with § 3. The sheriff of Charles County, as we have observed, is a State official. He is therefore subject to the public general law, and any "public records" over which he has custody must be disclosed in accordance with §§ 2–4.[8]

From this, it is evident that Kline was not obliged to seek the records from the Board of Public Safety before seeking judicial review of the sheriff's denial of access; nor was he obliged to comply with any special procedural requirements—such as an "affidavit showing good cause"—of the public local law.

There are two other points that bear mention before concluding this Opinion.

---

**8.** Section 1(g) of art. 76A defines "custodian" as "the official custodian and any authorized person having personal custody and control of the public records in question."

■ Throughout this proceeding, the county attorney, on behalf of the sheriff, has laid great stress on the fact that Kline failed to request the records from the Board of Public Safety. She argued to the court below and has argued to us that there are still *administrative* remedies available to Mr. Kline, if only he would take advantage of them. It came as a surprise to us (and to Kline), therefore, when, at oral argument, she indicated that one category of the records sought by Kline does not exist and the other she regards as non-disclosable under both the public general and the public local laws. If that is true—even if it is not true, if that indeed is the sheriff's position—it is obvious that a request to the board would have been entirely meaningless. If the records do not exist, or if they are exempt from disclosure by law, appellant should have been told that in August, 1982, not fourteen months later at oral argument before this Court. For whatever reason, the sheriff and the county government have simply obfuscated and delayed Kline in his quest for the records; and that is not the way government officials ought to act.

Finally, there is a question of whether Kline's petition for judicial review was timely.

When the public general law was first enacted in 1970, there was no provision in it for judicial review. Section 5 simply made a knowing and willful violation of the Act a misdemeanor, subjecting the violator to a $100 fine. In 1978, the Legislature rewrote § 5, providing, as additional enforcement mechanisms, (1) the right of administrative review under the "contested case" sections of the Administrative Procedure Act, if the agency or official was otherwise subject to that Act, and (2) the right to seek judicial review—*i.e.*, to seek a court order compelling the production of the requested document. Subsections (b)(4), (5), and (6) of § 5, as added in 1978, further permit the court, in any suit brought under the provisions of § 5, to award both compensatory and punitive damages against the governmental official or agency if the official or agency acted willfully in denying the applicant's request, to enforce its orders

through contempt proceedings, and to assess against the official or agency attorneys' fees incurred by the applicant. The criminal sanction remains as well.

The 1978 Act also enacted a new § 5-110 to the Courts article. It provides:

"An action to enforce any criminal or civil liability created under §§ 1 through 5 of Article 76A of this Code may be brought within two years from the date on which the cause of action arises, except that if the defendant has materially and wilfully misrepresented any information required under those sections to be disclosed to a person and the information so misrepresented is material to the establishment of liability of the defendant to the person under those sections, the action may be brought at any time within two years after discovery by the person of the misrepresentation."

Section 5-110 creates somewhat of an ambiguity in the law, when read in conjunction with Ch. 1100, Subtitle B of the Maryland Rules and in the context of the relief actually sought by Mr. Kline.

The sheriff's denial of Kline's request to inspect the two categories of documents at issue here represented a final administrative action,[9] which the circuit court was being asked to review. Although both § 5 and Kline's petition speak in terms of a mandatory injunction ordering the production of the records, in such a proceeding, the court would necessarily have to determine whether the records in question are subject to the Act and, if so, whether the sheriff's refusal to disclose them is justified. Any injunctive order issued by the court would, in effect, reverse the administrative action of the sheriff. That, ordinarily, would serve to bring the action within the purview of Ch. 1100,

---

**9.** Kline *may* have been entitled to seek further relief from the Board of Public Safety; however, § 5(a) of art. 76A makes clear that any such possible remedy "need not be exhausted prior to filing suit in the circuit court pursuant to this article."

Subtitle B of the Maryland Rules (Administrative Agencies—Appeal From).

Md.Rule B1a states that these rules (Subtitle B) apply "to the review of *any* final action of an administrative agency by a court where such review is specially authorized by statute, *regardless of the form of such review,* except where review is by way of mandamus, in which case the rules relating to mandamus shall apply. An application for review is hereinafter referred to as an appeal." (Emphasis supplied.)

Md.Rule B1b defines an "administrative agency", for purposes of these rules, as including "any . . . officer of the State . . . whether appointed or elected, whether legislative, administrative, executive, ministerial or quasi-judicial, whose action or decision is specifically subject to court review, except by way of mandamus, by any provision . . . in any general or local statute. . . ." That obviously includes the sheriff of Charles County.

The subtitle B rules contain a number of mandatory procedural requirements. The only one with which we need concern ourselves here is that set forth in Rules B4a and B5. Rule B4a provides:

"An order for appeal shall be filed within thirty days from the date of the action appealed from, except that where the agency is by law required to send notice of its action to any person, such order for appeal shall be filed within thirty days from the date such notice is sent, or where by law notice of the action of such agency is required to be received by any person, such order for appeal shall be filed within thirty days from the date of the receipt of such notice."

Rule B5 states, in relevant part, that "[i]f the appellant shall fail to file his order for appeal within the time prescribed by Rule B4. . . the court shall dismiss the appeal unless cause to the contrary be shown."

Appellant's petition, as we have noted, was not filed until October 28, 1982, which was more than thirty days after the

"date of the action appealed from". It was at least ten weeks after the August 3 inspection (at which the remaining records were not produced) and even longer after the sheriff verbally denied his request. No cause, good or otherwise, was shown for the delay; and, accordingly, *under the rule,* the court would have been obliged to dismiss the petition. *See Ohio Cas. Ins. v. Insurance Comm'r,* 39 Md.App. 547, 387 A.2d 622 (1978).

The statute, however—*i.e.,* § 5–110—permits an action "to enforce any criminal or civil liability created under sections 1 through 5 of Article 76A" to be brought within two years. Section 5(b) of art. 76A, moreover, makes clear that the enforcement of any such *civil* liability—damages and attorneys' fees—is merely part of the relief that may be granted in an action to compel the disclosure. A proceeding to enforce the criminal sanction must, of course, be a separate one, as that not only invokes the criminal jurisdiction of the court, but must be brought by the State's Attorney. When read in conjunction with the Rule, the statutes thus raise at least the following questions:

(1) Are the statutes consistent with the Rule?

(2) Do they serve to withdraw all judicial proceedings under § 5 from the operation of the Rule?

(3) Do they, instead, permit only requests for damages and attorneys' fees to be brought after the thirty-day period, leaving the Rule to govern requests for orders compelling production?

We can find no evidence that, in enacting the 1978 amendments, the Legislature gave any thought to the matter, although it is presumed, of course, to have been cognizant of the Rules.

■ It is evident that there is at least a partial inconsistency. If Md.Rules B4 and B5 apply, a proceeding under § 5 must be brought within thirty days; if the statutes apply, a proceeding subject to § 5–110 may be brought within two years. As the statutes were the later enactments, they would prevail to the extent of the inconsistency. That

leaves the question of whether § 5–110 applies to all proceedings under § 5(b) or only those involving requests for monetary damages or attorneys' fees.

■ There are all manner of rules of statutory construction. Almost like Newton's law of physics, for each such rule compelling one result, there seems to be an equal and opposite rule compelling another result. Discerning the real legislative intent is, of course, the cardinal goal, and to do that statutes are to be read in such way as to avoid unjust, illogical, absurd, or unreasonable consequences. *See Kindley v. Governor of Maryland,* 289 Md. 620, 625, 426 A.2d 908 (1981), and cases cited therein. In that regard, it would be anomalous, indeed, to impose different time requirements on actions to compel the production of documents depending on whether the applicant seeks the ancillary monetary relief permitted under § 5. Such a construction would, in fact, lead to the mischievous result of encouraging applicants to seek money damages against government officials and agencies when all they really want are the documents.

■ We do not believe that the Legislature intended that kind of result. We think, therefore, that when § 5(b) and § 5–110, enacted as part of the same statute, are read together, they permit any action for judicial review under § 5 to be brought within two years. Whether that would serve to withdraw the proceeding from the ambit of other Rules included in Ch. 1100, Subtitle B, is a matter we need not decide in this case.

■ Accordingly, we conclude that Kline's petition was timely filed, that the public general law is applicable, and that the court erred in dismissing the petition. The case will be remanded to the Circuit Court for Charles County for further proceedings in accordance with § 5 of art. 76A.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.