I. The Commission Cannot Give "Execution" before "Judgment."
— By its order, of October 29th, 1912, the Commission deprived us of our annual rate telephones on January 1st, 1913, while, by the same order, it reserved its decision upon the question of flat rates and agreed to take further evidence up to the final hearing in April, 1913, upon *Page 4 
the question of continuing, or not, flat rate service, and further declared that later at some indefinite time in the future following said date of April 1st, 1913, it would finally decide the question concerning flat rates.
Up to the passage of the order of October 29th, 1912, we were protected in our holding of a flat rate service. The order of January 2d 1912, left us undisturbed until October 1st, 1912. Before October arrived the order of September 26th, 1912, continued us in possession of our rights till April 1st, 1913, three months after the date then set for final hearing.
The order of September 26th, 1912, makes a fresh start on the question of flat rates. You cannot make a new order reconsidering, rewriting and amending all that part of a previous order relating to the subject-matter (flat rates), and call it anything else than a new order, speaking for itself anew, from its own date. September 26th, 1912.
II. The Entire Procedure by the Commission in the TelephoneCompany's Case Was Without Authority of Law, Ultra Vires andVoid. — There was no formal complaint from any user of telephones brought before this Commission against the Telephone Company, asking for the abolition of our service or of any flat rate service.
There was no action instituted by the Commission itself of its own motion on the subject of telephones. But this matter originated solely and entirely with the Chesapeake and Potomac Telephone Company.
Instead of publishing new rates and schedules in the method intended by the Act the Company filed a complaint against its own patrons.
No such initial procedure is contemplated by the Act. I.C.C. v. D., L. W.R.R., 216 U.S. 531; C.I. L. Ry. Co. v.Comm., 38 Ind. App. 439; State v. C.M. St. P. Ry. Co., 16 South Dakota, 517; Commrs. v. O. Ry. Nav. Co., 17 Oregon, 65.
Secondly, the Commission cannot propose rates and never obtained jurisdiction to fix a rate in this case, because, as *Page 5 
we allege in our bill, and as is admitted on demurrer, they had not determined the existing rate to be unreasonable. I.C.C.,etc., v. L. N.R.R., 227 U.S. 92; L. N.R.R. v. I.C.C.,
195 Fed. Rep. 545.
The complaint must be either:
(a) An investigation of the Company and its practices by the Commission on its own motion and acting for the public, which this was not; or
(b) A complaint against unreasonable, discriminating or preferential rates by subscribers or users, or the officers of a municipality which this was not.
(c) Followed by a finding that the rate was unreasonable, etc. We specifically allege in the bill that such finding was never made as to our rate, which allegation the demurrers admit.
(d) Then and then only the power is given to establish maximum rates. So. Pac. Co. v. I.C.C., 219 U.S. 433.
III. Denying a Judicial Review to Test the Jurisdiction of theCommission, denies "Due Process of Law." — There is no appeal given by this Act, nor any Court given jurisdiction thereof.
Section 43 speaks of commencing "any" action "in any Court of Baltimore City of appropriate jurisdiction which may be adopted for the purpose, meaning, may we conjecture, if by injunction, etc., in equity before the chancellor, or if by mandamus or other legal right, then in a Court of Common Law?
An appeal would go to one definite certain Court, which would be given jurisdiction thereof in terms.
But section 43 is unintelligible, and therefore wholly void; for instance, who is to adopt the Court and how is it to be adopted? What is a Court of "appropriate jurisdiction," and who is to say it is appropriate, the Court, the Commission, the Suitor, or who? Is it to be a Court of Law, a Court of Equity, or the Criminal Court? No appellate jurisdiction is conferred upon any Court by any provision *Page 6 
of the Act creating the Public Service Commission, and independent of that Act no such jurisdiction exists.
Other Courts can only act entirely independently of this Act and upon substantive grounds of relief within their already existing jurisdiction.
The case of C.M. St. P. Ry. v. Minn. 134 U.S. 418, struck down a rate fixed by the Minnesota Railroad Commission because the law gave no judicial review of the reasonableness of the rate, while this Maryland Commission seeks to deny us the fundamental right to challenge its jurisdiction, which right would necessarily exist without any mention in the Act itself of either an appeal or a judicial review.
IV. The Act Provides for No Appeal to a Maryland Court to Testthe Reasonableness of Rates Fixed by the Commission, WithoutWhich the Rate-Making Provisions are Invalid. — Irrespective of any constitutional or jurisdictional questions the Act must give an appeal to a State Court to review the reasonableness of the rates fixed by the Commission as merely too high or too low, extortionate or the reverse.
(1) A statutory rate, on the one hand, is not subject to judicial review except as confiscatory. Budd v. New York,143 U.S. 517.
(2) A commission-made rate, on the other hand, must be reviewable as to its reasonableness merely, irrespective of any constitutional or jurisdictional question. C.M. St. P. Ry. v.Minn., 134 U.S. 418.
That case was not a case of confiscation. The Court was there dealing with a trifling milk rate from some local points in Minnesota to the City of St. Paul which could hardly affect the railway earnings one way or the other. Yet the Court said (at page 457):
"It deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, *Page 7 
and substitutes therefor, as an absolute finality, the action of a railroad commission which in view of the powers conceded to it by the State Court, cannot be regarded as clothed with judicial functions or possessing the machinery of a Court of Justice."
Nor can our Maryland Commission be clothed with judicial functions or possess the machinery of a Court of Justice except in violation of our State Constitution, which describes definitely all the Courts in which judicial power shall be vested, and provides that the judges shall be elected, not appointed, and in violation also of Article 8 of our Bill of Rights, forbidding the union of legislative and judicial powers in one body.
V. The Repeal (if any) Relates Solely to the Question ofPrice and Gives no Power to Abolish Our Service. — Section 31 1/2 uses the following language: "Every gas corporation and every electrical corporation shall furnish and provide such service, instrumentalities and facilities as shall be reasonably safe and adequate and in all respects just and reasonable. All charges made or demanded by such gas corporation and electrical corporation for gas, electricity or any service rendered or to be rendered, shall be just and reasonable and not more than allowed by law or by the order of the Commission; and all Acts or parts of Acts heretofore passed and now existing, prescribing or limiting the price at which any gas corporation or electrical corporation, or any other corporation subject to this Act, may furnish, sell or dispose of its gas or electricity or other product or utility are hereby repealed, it being the intent of this Act that the powers of the Commission herein created to ascertain the price of such gas or electricity or other product of utility as provided for herein, shall supersede all such Acts or parts of Acts aforesaid. Every unjust or unreasonable charge made or demanded for gas electricity or any such service, or in connection therewith, or in excess of that allowed by law or by the order of the Commission, is prohibited." *Page 8 
VI. Section 31 1/2 Relates Solely to Gas and ElectricalCorporations.
VII. The Telephone Laws are Not Repealed. — We contend that the words in the statute "not more than allowed by law," "conformably to the law," "within legal limits," etc., etc., and appearing in similar form of expression at least twenty times, wherever the fixing of rates or the enforcement of rates or the like is mentioned, show a clear purpose on the part of the Legislature to place a definite limit on the powers intended to be conferred. Brinckerhoff v. Bostwick, 99 N.Y. 185.
That while the Commission could fix rates they could not exceed the existing maxima.
Even in the repealing section itself it was thought necessary to twice repeat these expressions and to close the section in these emphatic words:
"Every unjust or unreasonable charge made or demanded for gas, electricity or any such service or in connection therewith, or in excess of that allowed by law or by order of the Commission is prohibited."
If the words immediately preceding had eliminated everything but the Commission's discretion why in writing that section should the expression "or in excess of that allowed by law" remain?
It immediately precedes the words "or by order of the Commission." This latter would have been sufficient if the preceding words had wiped the slate clean.
As is said by this Court:
"Why were the words `not exceeding' thus inserted? What is their significance?" * * * "We cannot neglect these words."Scott v. B. O.R. Co., 93 Md. 505.
There is only one way to give both expressions a meaning, and that is that the "powers of the Commission to ascertain the price" are expressly limited by the latter clause, and their discretion prohibited to be exercised "in excess of that allowed by law" particularly when all the sections granting the rate-making power carefully repeat the qualification. *Page 9 
Again all the sections providing for enforcement of the Act charge the Commission and its counsel to prevent charges by any Public Corporations of more than allowed by law.
And the only section referring to suits by the corporations to collect charges provides that, if "a price has been demanded in excess of that fixed by the Commission or by law in the municipality or county wherein the action arose no recovery shall be had therein, etc."
VIII. The Necessity For Maximum Rate Laws. U.S. v. Asso.,168 U.S. 332.
IX. Any Legislative Intent to Destroy the Existing MaximumRates is Negatived by the Serious Consequences Which WouldEnsue.
X. There can be no Power to Repeal a Law Granted to anExecutive Board. — It will not do to say that power to repeal and reconstruct the many maximum rate laws of the State, local, special and general in character, was intended to be conferred upon and confided to this Commission.
The power to repeal a law cannot be granted to an executive official, in violation of our fundamental division of powers into executive, legislative and judicial.
There has been no attempt heretofore in this State to establish a rate-making commission. And, therefore, our bill raises the question distinctly as to whether it can be done or not.Bradshaw v. Langford, 73 Md. 430.
But granting for the purposes of the argument, that the theory of rate-making by Commission will be accepted and applied in Maryland, here we have a step much further, namely, an attempt to delegate to this Commission the power to repeal one after another the various existing maximum rate laws, and in so doing to repeal them as to parts of the State while leaving them in full force in other parts as is attempted in this case, which only affects the City of Baltimore. Such power does not come within the theory on which rate-making by Public Commissions is sustained, but is to flatly confer upon an executive board the right to legislate *Page 10 
and thus subvert the structial division of powers in our government, and cannot be sustained on any theory of constitutional construction. St. L. Merchants B.T. Ry. Co. v.U.S., 188 Fed. Rep. 195.
We have in this case an existing grounded-circuit-service telephone law which by the action of the Commission in passing the order is said to be "modified" out of existence.
At the same time the Commission makes a new rate and a new service "which necessarily involves a discretion as to what" the new law "shall be."
Nothing could be more clearly of the essence of fundamental legislative action which cannot be delegated to a Commission.
This is apparently the only case that has ever arisen where an executive officer, on the claimed authority of the statute creating his office, has asserted the right by action of his own to wipe from the statute books another and a different law which in his opinion conflicted with and limited his powers.
This is the power which we submit cannot be delegated to an executive officer by the General Assembly of Maryland.
Charles J. Bonaparte (by leave of Court) filed a brief in behalf of certain users of the "Flat Rate" telephone service, under Chapter 387 of the Acts of 1910. The following is a synopsis of the brief:
Section 368 and section 372 of Article 23 of the Code of 1912 (formerly section 333 and section 337 of the same article in the Code 1904) prohibited charges for certain telephone service at any rate exceeding $6.50 per month. It is claimed that these sections were repealed by section 31 1/2 of the Public Service Commission Law (Law of 1910, p. 375; Code 1912, section 744), which attempts to vest in the Public Service Commission the right to regulate the rates of such services notwithstanding sections 368 and 372 of the Code. *Page 11 
Section 54 of the Public Service Commission Laws declares that each section of the Act, every part of each section is to be independent (Laws 1910, p. 391; Code 1912, p. 758).
This section 31 1/2 may be divided into three sections or parts, thus:
 Part 1 —
 Sec. 31 1/2. Every gas corporation and every electrical corporation shall furnish and provide such service instrumentalities and facilities as shall be reasonably safe and adequate and in all respects just and reasonable. All charges made or demanded by such gas corporation and electrical corporation for gas, electricity or any service rendered or to be rendered, shall be just and reasonable and not more than allowed by law or by order of the Commission.
 Part 2 —
 "And all Acts or parts of Acts heretofore passed and now existing, prescribing or limiting the price at which any gas corporation or electrical corporation, or any other corporation subject to this Act, may furnish, sell or dispose of its gas or electricity or other product or utility are hereby repealed, it being the intent of this Act that the powers of the Commission herein created to ascertain the price of such gas or electricity or other product or utility as provided for herein, shall supersede all such Acts or parts of Acts aforesaid."
 Part 3 —
 Every unjust or unreasonable charge made or demanded for gas electricity or any such service, or in connection therewith, or in excess of that allowed by law or by the order of the Commission, is prohibited. *Page 12 
These three parts of this section are therefore not only independent under the terms of the Act, but are, in fact, altogether inconsistent and mutually repugnant. The provisions of Part 1 and Part 3 show beyond reasonable doubt, an intention of the Legislature to maintain in force the existing rates "allowed by law" as maximum rates, leaving the Commission to determine what rates might be "just and reasonable" below these maximum charges. Part 2, however, professes to repeal "all Acts or parts of Acts * * * prescribing or limiting the price at which any * * * corporation subject to this Act may furnish, sell or dispose of its * * * product or utility." The words "not more than allowed by law" in Part 1, and the words "in excess of that allowed by law" in Part 3, become altogether meaningless and superfluous if this language of Part 2 is to be given its most obvious meaning and is to be considered an expression of legislative will.
If two successive sections of an Act are mutually repugnant, so that it is impossible to give a rational meaning to all the language of the first if the second be enforced, and to all the language of the second if the first be enforced, then the second operates as a repeal to the first. Smith v. SchoolCommissioners, 81 Md. 516; State v. Shelby County, 36 Ohio St. 326;Packer v. Sunbury and Erie R.R. Co., 19 Pa. St. 211.
From which it would appear that Part 2 of this section is in effect repealed by Part 3, and only Part 1 and Part 2 left effective.
In answer to an objection that these sections relate only to gas and electric light companies, we find that in section 40 of the same Act the following language occurs:
 All rates, tolls and charges used, made or demanded by any such telegraph company or telephone company for any telegraphic or telephonic communication or service shall be just and reasonable and not more than allowed by law or by order of the Commission and made as authorized by this Act. Laws of 1910, p. 386; Bagby, Art. 23, § 454, Vol. 1, p. 753. *Page 13 
So that even if Part 2 of section 31 1/2 be not repealed by Part 3, it is repealed by this section 40.
The essential element of the repugnancy of Part 2 of section 31 1/2, with Parts 1 and 3, and with the language quoted from section 40, lies in the word "limiting."
In construing statutes, the mere words which the Legislature uses are not always controlling; it is the real intent which is to be sought after and must prevail. Roland Park Co. v.State, 80 Md. 451; State v. Milburn, 9 Gill, 109; Milburn
v. State, 1 Md. 17; Wilson, etc., v. State, use of Davis,21 Md. 1.
The word "limiting," as used in section 31 1/2, may be used of minimum no less than of maximum, charges, and if we consider, therefore, "limiting" as synonymous with "prescribing" or "fixing," we can give a sense to Part 2 of section 31 1/2 which will make it harmonize with Parts 1 and 3, above quoted, and section 40. Reading the three parts of this paragraph of section 31 1/2 together, it would then amount to laying down the rule that charges and tolls must be (1) just and reasonable, (2) not greater than prescribed by the Commission, (3) not more than allowed by law, and that all limitations or prescriptions contained in existing laws, except those fixing the maximumcharges, should be repealed, to the end that, subject to the provisions of law fixing the highest rate which may be charged for a "product, service or utility," the Commission shall determine what rates would be just and reasonable in each particular case. It may be said and truly that this is giving a somewhat unusual meaning to the word "limiting;" but this Court gave more unusual and indeed an ungrammatical sense to the word "since" in Roland Park Company v. The State, above quoted and in the language of CHIEF JUDGE McSHERRY, "the real intention when ascertained will always prevail over the literal sense of the language."
Moreover, Part 2 of section 31 1/2 is in quotation marks, and amounts substantially to a statement that it is not the original thought of the Legislature, but that it is taken from *Page 14 
some other statute or document, and without some statement as to the source and purpose of the quotation the indication of this fact would seem to be altogether meaningless and inappropriate. It suggests that something has been omitted, which, of course, the Court cannot supply; but as we have only a part of what the Legislature meant to say, it leaves it doubtful as to whether the Court has before it a sufficiently complete expression of the legislative will in this respect to justify it in treating the quoted passage as an expression of the legislative will at all. This is greatly strengthened when it is noted what glaring inconsistency there is between this passage and the whole tenor of the remainder of the Act. References to a rate of compensation fixed by law and not under the control of the Commission are found twice in section 13 of the Act — Laws of 1910, p. 355;Bagby, I, p. 726; once in section 23 — Laws of 1910, p. 366.Bagby, I, p. 736; twice as already noted, in section 31 1/2 itself — supra; three times in section 37 — Laws of 1910, p. 382, Bagby, I, p. 750; once in section 38 — Laws of 1910, p. 384, Bagby, I, p. 752; and once, as already noted, in section 40.
Ten times, at least, in the course of this enactment, the Legislature has used words clearly inconsistent with the provisions of the quoted portions of section 31 1/2; ten times, at least, it has spoken in this Act of obedience to statutes when if the part within quotation marks of section 31 1/2 is a part of the law, and is to be construed as claimed by the appellees in this case, the statutes to which these references were made had no legal existence whatever. Under these circumstances the Court is authorized to hold that this borrowed portion of section 31 1/2 is no part of the law, because, although physically inserted (just how, we know not) in the text of the statute, it forms no part of the expression of the legislative will. See — HolyTrinity Church v. U.S., 143 U.S. 457; U.S. v. Delaware andHudson Co., 213 U.S. 366; Same case, 213 U.S. 403-415.
By Chapter 734 of the Laws of 1912 it is provided: "That a new section be and the same is hereby added to Article 23 *Page 15 
of Bagby's Annotated Code of the Public Civil Laws of Maryland, title `Public Service Commission,' to be known as section 428-A, and to come immediately after section 428, and to read as follows": Laws of 1912, p. 1231.
By so doing the Legislature recognized Article 23 of Mr. Bagby's Code not only as evidence of the law in this State, but as the law of the State. It is well settled that such a recognition by the General Assembly makes that law which it treats as law. State v. Greenwell, 4 G. J. 407, 418-419;Basshor v. Dressel, 34 Md. 503; and Koch v. North AvenueRailroad Company, 75 Md. 222.
And in so doing the Legislature declares that sections 333 and 357 of Article 23 of the Code of 1904, which became sections 368 and 372 of the same Article of Mr. Bagby's Code of 1912, were not to be deemed repealed by section 31 1/2 of the Acts of 1910, Chapter 180, p. 375, and therefore the said sections, 368 and 373, are in force.
Our Public Service Commission, like a majority of the similar bodies created, and especially like the Virginia State Corporation Commission, is a body clothed with both judicial and legislative functions. Winchester and Strasburg R.R. Co. v.Commonwealth of Virginia, 106 Va. 264; Dreyer v. Illinois,187 U.S. 71; Prentis v. Atlantic Coast Line, 211 U.S. 238;Norfolk and Portsmouth R.R. Co. v. Commonwealth of Virginia,103 Va. 289.
But, while the Constitution of the United States and of the State of Virginia allows the same body to exercise judicial and legislative functions, our Declaration of Rights asserts, Article 8:
"That the legislative, executive and judicial powers or government ought to be forever separate and distinct from each other; and no persons exercising the functions of one of said departments shall assume or discharge the duties of any other."
While no case seems to have arisen in which this Court was compelled to hold an Act of Assembly unconstitutional *Page 16 
by reason of this particular combination of powers in one office or official body, the force of the prohibition has been repeatedly recognized in decisions of this Court. University ofMd. v. Williams, 9 G. J. 410; Beasley v. Ridout,94 Md. 659; Prentis v. Atlantic Coast Line, 211 U.S. 237.
The action of this Commission is unlike that of certain administrative powers, such as County Commissioners, Commissioners for Openings Streets, etc., and others which discharge primarily quasi judicial functions subject to a right of appeal to the Courts with respect to all questions of law or fact involved in the proceedings.
Their work is essentially preliminary and the right to a determination by those to whom alone the judicial power is entrusted by the Constitution is carefully preserved to any one whose rights are affected by their action. Steuart v.Baltimore, 7 Md. 500; Danner v. State, 89 Md. 226.
Charles H. Carter (with a brief by Bernard Carter Sons,
of which a synopsis follows), for the C. P. Tel. Co., appellee.
I. As to whether the Public Service Commission Act was unconstitutional, on the ground of its being an illegal delegation of legislative power. See — Tilley v. Savannah,etc., R.R. Co., 5 Fed. Rep. 641, 653, 659; Chicago, etc., R.R.Co. v. Dey, 35 Fed. Rep. 866, 875; Railroad CommissionCases, 116 U.S. 307, 336, 347, 352; Reagan v. Farmers' Loan,etc., Trust Co., 154 U.S. 362, 393 and 394; Honolulu RapidTransit Co. v. Hawaii, 211 U.S. 282, 290, 291; Pensacola,etc., R.R. Co. Case, 29 Fla. 620; Gulf, etc., R.R. Co. v.State, 120 S.W. Rep. 1028, 1034; Mich. Central R.R. Co. v.Mich. R.R. Com., 160 Mich. 355; see also — Downs v. Swann,111 Md. 53 and 61.
II. As to the 4th paragraph of the bill, alleging that the Commission has no warrant in law or authority to abolish the Statutory Flat Rate Terms of $78.00 per annum. *Page 17 
Sections 368 to 372, inclusive, of Bagby's Code of 1912, were enacted by Act of 1892, Chapter 387, and prescribe the maximum rate of $6.50 per month for telephone services in cities and towns; rates for telephone services between cities and towns within the State; provide against discrimination between patrons and penalties for violations of the provisions of the laws.
Section 373 was enacted by Act of 1894, Chapter 207, providing for special contracts in writing for special forms and amounts of telephone equipment and service, but that nothing therein contained should prevent or interfere with the furnishing the service established by the Act of 1892, Chapter 387.
Such was the law in regard to regulation of telephone companies for 18 years, when the Act of 1910, Chapter 180, known as the "Public Service Law of Maryland," was enacted.
This Act provides for the whole subject of regulation and administration of telephone companies within the State, and inasmuch as the provisions of the Acts of 1892 and 1894 greatly interfere with the broad power and wide discretion conferred upon the Public Service Commission of Maryland by the Act of 1910, the Acts of 1892 and 1894 were repealed by the Act of 1910. W. Md.R.R. Co. v. Appeal Tax Court, 50 Md. 296; State v. N.C.Rly. Co., 90 Md. 473-4.
Moreover, the Acts of 1892 and 1894 are expressly repealed by section 31 1/2 of the Act of 1910.
III. Chapters 21 and 734 of the Act of 1912, the first making Bagby's Code of 1912 evidence of the law, and the second adding a new section to that Code, do not re-enact the provisions of the Acts of 1892 and 1894, codified in Bagby's Code. Erb v.Grimes, 94 Md. 104.
IV. But assuming that the Act of 1892, as codified in Bagby's Code of 1912, was not repealed by the Act of 1910, the Public Service Commission had power under the provisions of the Act of 1910 to discontinue the Statutory Service. *Page 18 
V. The allegation that the effect of the orders of the Commission of September 26th and October 29th, 1912, were to re-open the decision reached by the Commission to abolish the Statutory Flat Rate for business service, are unsupported by and contrary to the provisions of the exhibits and are not to be taken as true under the demurrer. Gusdorf v. Schleisner,85 Md. 360.
VI. No confusion or uncertainty as to the legal status of the complainants occasioned by the order of the Commission.
VII. The complainants have not filed proper exhibits with their bill to enable the Court to consider the questions raised by the allegations that the order of the Public Service Commission passed January 2d 1912, was passed at the instance and on the petition of the Chesapeake and Potomac Telephone Company of Baltimore City, and that the Commission did not determine the $78.00, or Statutory Rate for business service, to be unreasonable. Sprigg v. Western Telg. Co., 46 Md. 74 and 77;Mayor v. Weatherby, 52 Md. 450; Burr's Case, 19 Md. 135;Banks v. Busey. 34 Md. 439; Morton v. Grafflin,68 Md. 545 and 556; Miller v. Balto. County Marble Co., 52 Md. 646.
W. Cabell Bruce (a synopsis of whose brief follows), for the Public Service Commission, appellee.
(1) If the General Assembly had no constitutional power to confer upon the Public Service Commission the authority to fix telephone and other rates, as is contended in the bill, it is, of course immaterial to inquire whether the plaintiffs appealed seasonably from the orders of the commission of January 2, 1912, April 25, 1912, and September 26, 1912; for, in that case, they would have a standing in a Court of Equity entirely independent of the Public Service Commission Law for the purpose of restraining the Commission and the Telephone Company from interfering with their use of "the statutory telephone service." But at this late day. *Page 19 
when the Interstate Commerce Commission is asserting its vast and undisputed jurisdiction, founded on provisions, upon which those of the Public Service Commission Law of Maryland are closely modeled, and Public Service Commissions in New York, Wisconsin and other States, to say nothing of railroad and other like commissions, based upon similar grants of authority by the Legislature, are in full operation, we deem it unnecessary to argue that the Public Service Commission Law of this State is not unconstitutional and void as involving an undue delegation by the General Assembly of powers committed to it exclusively by the State Constitution. The law does not delegate legislative power but merely confers upon the commission the administrative function of enforcing certain definite standards or rules of regulation which the Legislature has itself prescribed. If this Court has any judicial curiosity left for such a stale inquiry as this distinction involves, it will soon be set at rest, we think, by an examination of the following authorities: Stone et al. v.Farmers' Loan Trust Co., 116 U.S. 307, 336; Stone et al. v.Illinois Central R.R. Co., 116 U.S. 347; Stone et al. v. NewOrleans Northeastern R.R. Co., 116 U.S. 352.
These three cases are collectively known as the Railroad Commission cases: Reagan v. Farmers' Loan Trust Co.,154 U.S. 362, 393, 394.
To the same effect substantially the decisions in the following two cases: Reagan v. Mercantile Trust Co., 154 U.S. 413, 418;Reagan v. Farmers Loan and Trust Co., 154 U.S. 420; AtlanticCoast Line R.R. Co. v. North Carolina Corporation Commission,206 U.S. 1, 19; Honolulu Rapid Transit Co. v. Hawaii,211 U.S. 282, 290, 291; Joyce, Franchises (1909), secs. 160, 166, 167, 168, 169, 170, 381, 390, 400, 401, 408; Hutchinson,Carriers (1906), Vol. II, sec. 574, p. 651, sec. 575; 8 Cyc. 834; 6 Ency. 1022, 1030, note 14; Cooley, ConstitutionalLimitations, pp. 163 to 174 871 to 873; Beale Wyman, RailroadRate Regulation, sec, *Page 20 
1309; Noyes, American Railroad Rates, page 206; Mobile,Jackson and Kansas City R.R. Co. v. Mississippi, 210 U.S. 187, 202; Dow v. Beidelman, 125 U.S. 680; Georgia R.R. and BankingCo. v. Smith, 128 U.S. 174, 179, 180; Charlotte, Columbia andAugusta R.R. Co. v. Gibbes, 142 U.S. 386, 393, 394; Chicago,Milwaukee and St. Paul Ry. Co. v. Minnesota, 134 U.S. 418; Buddv. New York, 143 U.S. 517; New York and New England R.R. Co. v.Bristol, 151 U.S. 556, 571; St. Louis and San Francisco Ry. Co.v. Gill, 156 U.S. 649, 659, 666; Chicago, Milwaukee and St.Paul Ry. Co. v. Tompkins, 176 U.S. 167; McChord v. Louisvilleand Nashville R.R. Co., 183 U.S. 483, 499; Minneapolis and St.Louis R.R. Co. v. Minnesota, 186 U.S. 257; Atlantic Coast LineR.R. Co. v. Florida, 203 U.S. 256; Seaboard Air Line Ry. Co. v.Florida, 203 U.S. 261; Alabama and Vicksburg R.R. Co. v.Mississippi Railroad Commission, 203 U.S. 496; Siler v.Louisville and Nashville R.R. Co., 213 U.S. 175; Central ofGeorgia Ry. Co. v. Railroad Commission, 161 Fed. Rep. 925, 984, 985; s.c. 170 Fed. Rep. 225; State v. New Haven andNorthampton Co., 43 Conn. 351, 382; State v. Atlantic CoastLine R.R. Co., 56 Fla. 617, 624, 636, 637; Southern Ry. Co. v.Atlantic Stove Works, 128 Ga. 207, 216; Southern Ry. Co. v.Melton, 133 Ga. 277, 290; Tilley v. Savannah, Florida andWestern R.R. Co., 5 Fed. Rep. 641, 653 to 659; Chicago,Burlington and Quincy R.R. Co. v. Jones, 149 Ill. 361, 378;Southern Indiana Ry. Co. v. Railroad Commission,172 Ind. 113, 123; Burlington, Cedar Rapids and Northern Ry. Co. v. Deyet al., 82 Iowa 312; State v. Missouri Pacific Ry. Co., 76 Kansas, 467, 473 to 481; Railroad Commissioners v. Portlandand Oxford Central R.R. Co., 63 Me. 269, 283; Michigan CentralRy. Co. v. Michigan Railroad Commission, 160 Mich. 355;State v. Fremont, Elk Horn and Missouri Valley R.R. Co., 22 Nebraska, 313, 329; Southern Pac. Co. v. Bartine, 170 Fed. Rep. 725, 749; Merrill v. Boston and Lowell R.R., 63 N.H. 259, 264; Trustees of the Village of Saratoga Springs v.Saratoga Springs Electric Light and Power Co., 191 N.Y. 123 *Page 21 
; People ex rel. R.R. Co. v. Public Service Commission,194 N.Y. 383; Atlantic Express Co. v. Wilmington and WeldonR.R. Co., 111 N.C. 463; Gulf, C. and S.F. Ry. Co. v. State,
55 Texas Civ. App. 108[55 Tex. Civ. App. 108][55 Tex. Civ. App. 108] [55 Tex. Civ. App. 108][55 Tex. Civ. App. 108][55 Tex. Civ. App. 108] [55 Tex. Civ. App. 108]; State ex rel. Great Northern Ry. Co. v.Railroad Commission, 52 Wn. 33, 36, 37; Minneapolis, St. Paul and Sault Ste.Marie Ry. Co. v. Railroad Commission, 136 Wisc. 146, 163, 164.
It is needless to further multiply the citation of authorities upon this point. It is sufficient to say that in twenty-four States of the Union the power of the Legislature to commit to a commission the regulation of corporations has been expressly upheld, and in no State in the Union, it is believed, has this power ever been judicially denied. See also, Downs v. State,111 Md. 53, 61; Baltimore v. Clunet, 23 Md. 449, 469;Baltimore v. Gahan, 104 Md. 145, 155.
Our State Board of Medical Examiners, State Board of Commissioners of Practical Plumbing, Live Stock Sanitary Board, State Board of Dental Examiners, Bureau of Industrial Statistics, and State Roads Commission, are illustrations of the extent to which powers which the Legislature itself may exercise have been committed to commissions in this State. We select these boards as illustrations because their powers have all been upheld by the Court of Appeals. Scholle v. State, 90 Md. 729; Manger v.Board, 90 Md. 659; Watson v. State, 105 Md. 650; Singer
v. State, 72 Md. 464; State v. Broadbelt, 89 Md. 565;State v. Knowles, 90 Md. 646; State v. Hyman, 98 Md. 596;Bonsal v. Yellott, 100 Md. 481.
But if the plaintiffs have no standing in this Court independent of the Public Service Commission Law, it then becomes a matter of essential importance that their appeal to the Circuit Court was too late, so far as the orders of January 2, 1912, April 25, 1912, and September 26, 1912, are concerned, inasmuch as their bill, which was filed (as we have seen) on December 23, 1912, was filed after the lapse of more than sixty days from the date of each and every one of these orders (Pub. Serv. Com. Law, sec. 43). It was filed, *Page 22 
it is true, within the period of sixty days from the passage of the order of October 29, 1912, but, if that order operated no change in the order of January 2, 1912, except in extending the life of existing flat rate contracts from October 1, 1912, to January 1, 1913, it was a mere dependency (of purely secondary importance) of the order of January 2, 1912, and in itself wholly insufficient to supply a basis for an appeal seeking to enjoin the substitution of the measured business service for the statutory service finally worked by the order of January 2, 1912. When, therefore, the bill was dismissed in this case, the order of October 29, 1912, logically, if not necessarily, drawn into the decree of dismissal along with the three previous orders of the Commission. A mere order extending the time when the flat rate service was to be supplanted by the measured service finally provided for by the order of January 2, 1912, obviously furnished no adequate foundation for such relief as that prayed in this case. But how untenable seems to be the position of the plaintiffs that they did not take their appeal earlier because to do so before a final determination would have been premature and productive of unnecessary litigation and expense, when we recollect that the order of January 2, 1912, was an absolutely final order in every sense, and that the order of April 25, 1912, was merely explanatory of some of its terms, and that no other order was passed in the case by the Commission until September 26th, 1912, and that yet the plaintiffs never took an appeal to the Circuit Court until December 23, 1912. The truth is that not only was the order of January 2d 1912, a final order in its terms, but there was nothing in the terms of any one of the three subsequent orders to disturb this finality. An examination of the four orders which are filed as exhibits with the bill and which, of course, control any inaccurate version of their terms contained in the bill, shows that from first to last the continuity of the order of January 2d 1912, substituting the measured service for the flat rate service remained unbroken, and that the three subsequent orders of the Commission *Page 23 
operated no practical result except that of extending on the whole the time when existing contracts for the flat rate service were to cease pursuant to the provisions of the order of January 2d 1912, and affording an opportunity to the Protective Telephone Association to produce good reasons why the Commission (which unlike a Court has complete control ever its own orders at all times) should not revise the rates fixed by the order of January 2d 1912.
(2) The real basis, however, upon which the bill in this case rests is not the claim that the orders of the Commission are so devoid of finality that any interference with the pre-existing contractual relations between the plaintiffs and the Telephone Company should be enjoined for the present, but the claim that the statutory provisions relating to the $78.00 grounded circuit telephone were not repealed by the Public Service Commission Law. Our answer is that they were. By section 31 1/2 of that law it is provided that "all Acts or parts of Acts heretofore passed and now existing, prescribing or limiting the price at which any gas corporation or electrical corporation or any other corporationsubject to this Act, may furnish, sell, or dispose of its gas or electricity or other product or utility are hereby repealed, it being the intent of this Act that the powers of the Commission herein created to ascertain the price of such gas or electricity or other product or utility as provided for herein, shall supersede all such Acts or parts of Acts aforesaid." Language more appear comprehensive than this for the purpose of abolishing all rates fixed by statute at the time of the passage of the Public Service Commission Law and of delegating the determination of all such rates to the commission, it is hard to conceive. It is true that these words are found in a paragraph otherwise relating to gas and electrical corporations alone. It is no unusual thing for special legislative provisions to be found out of place even in measures which were not amended as hurriedly and freely as this law was. But the words themselves are too palpably general and clear to apply to anything less than the rates for all public utilities or services under *Page 24 
the supervision of the commission. It is observable, besides, that in the Public Service Commission Law, under the headings relating especially to common carriers, there are similar references to other public service agencies than common carriers. For instance, under the heading "General Powers and Duties of the Commission in Respect to Common Carriers, Railroads and Street Railroads," there are repeated allusions in section 20 to persons and corporations subject to the Act other than common carriers. See also, to go no further, section 21, under the heading "Reports of Common Carriers, Railroads, Street Railroads."
Some stress was laid by the counsel for the appellants in the argument below upon the fact that the words of repeal which we have just cited are immediately preceded by these words: "All charges made or demanded by any such gas corporation and electrical corporation for gas, electricity, or any service rendered or to be rendered shall be just and reasonable and not more than allowed by law or by order of the commission," and are immediately succeeded by these words, "Every unjust or unreasonable charge made or demanded for gas, electricity or any such service, or in connection therewith, or in excess of that allowed by law or by the order of the commission, is prohibited." The words "by law," it was contended, shows that rates fixed by statute were not intended to be repealed, but that co-existent rates, some fixed by statute and some fixed by the order of the commission, were contemplated by the law. The contention is of course hopelessly repugnant to the express language of the repeal, — "All Acts or parts of Acts heretoforepassed and now existing, prescribing or limiting the price, etc." The requirements of the words "by law" can readily be gratified without doing any such direct violence to the unqualified wording of the repeal. It can be referred to future statutes fixing rates passed subsequent to the passage of the Public Service Commission Law or to tariff schedule rates filed by corporations and persons pursuant to section 15 and other similar sections of the law, and which until changed with the consent of the *Page 25 
commission, are just as much rates fixed "by law" as maximum rates prescribed by orders of the commission after controversy and hearing.
Sections 368 to 372 of Article 23 of the Code codify the provisions of the Act of 1892, Chapter 387. Section 373 codifies the provisions of the Act of 1894, Chapter 207. The object of the Act of 1892 was to prescribe a fixed rate, $78.00, for the form of telephone equipment and service (now obsolescent) known as "The Grounded Circuit Telephone Equipment and Service." All the provisions of the Act other than those that relate directly to the rate are merely subsidiary to the latter, and are so integrally and dependently associated with the latter that they necessarily fall with the latter. The leading and only object of the Act of 1892 was to secure to the citizen the right to a fixed telephone rate and to define the character of the service for which the rate was paid so clearly that upon paying the rate the citizen would be certain of a service at least as good as that defined. In other words, the sole object of that Act was to prohibit extortionate telephone rates.
The Act of 1894 originated in the desire of the citizen to be left free to enter into a special contract at a higher price than $78.00 for a form of telephone equipment and service (The Metallic Circuit Service) better than the inferior grounded circuit service. The Act conferred this privilege, preserving, however, the right of the citizen to stickle for the defective $78.00 service, if he saw fit to do so. The effect of the Public Service Commission Law was to sweep away the $78.00 service and rate, as well as the unqualified freedom of the citizen to enter into special contracts for telephone service with the Telephone Company. If the Act of 1894 has been swept away, why not the Act of 1892 too? It manifestly has been.
Under statutes similar to our Maryland law it is held that the Court does not decide what order is, in its opinion, reasonable, but whether the Commission's order is unreasonable; that unless the corporation shows by clear and satisfactory *Page 26 
evidence that the order is unreasonable then it must stand; that great weight must be given to the Commission's orders; and that if the order is such that reasonable men might differ with regard to it, then it cannot be said to be unreasonable, even though the Court itself might not have passed the order. M. St. P. St. M.Ry. v. R.R. Com., 136 Wisc. 146, 164, 167, 169; Morgan'sLine v. R.R. Com., 109 La. 247, 263, 265; R.R. Co. v. Neb.St. Ry. Com., 85 Neb. 818, 824, 827, 830; D.L. W.R.R. Co. v.R.R. Com., 74 A.R. 269, N.J. 1909.
The General Assembly of 1892 by an Act, Chapter 387, undertook the regulation of the rates to be charged by Telephone Companies for the service rendered to their subscribers. The rental fixed by the Act was what is known as a flat rate of six dollars and fifty cents per month for one telephone and a lesser rate where the customer had two or more instruments. The service rendered at that time was what is called the grounded circuit. As improvements were made in the apparatus, the metallic circuit came into use, and in 1894, the Legislature of that year by Chapter 207, amended the Act of two years earlier by providing that any person, firm or corporation might, by special contract, agree with the Telephone Company for special equipment or service, at such rates and upon such terms and conditions as might be stipulated in the contract. There were then two rates in force for the furnishing of telephone service, one a flat rate of $78.00 per annum, and the other a contract rate which might be varied according to the character of the service afforded.
In 1910 the Legislature passed an Act entitled "An Act to Create a Public Service Commission, and prescribing its powers and duties, and to provide for the regulation and control of Public Service Corporations and Public Utilities." (Chapter 180 of the Acts of 1910, page 338.)
This Act was, in the main, like similar Acts passed in a number of the States, in response to a supposed popular demand *Page 27 
for a more effective and stringent regulation of firms or corporations engaged in the conduct of public utilities.
On January 2d 1912, the Public Service Commission of Maryland promulgated an order prescribing the rates of charges for telephone service in the City of Baltimore, to be effective on and after May 1st, 1912, with an option to flat rate subscribers to continue their flat rate contracts until the first of October, 1912. These rates were included in seven distinct schedules, under which service for residences was placed on a flat rate basis, and a measured rate was substituted for the flat rate theretofore prevailing for business service. The order further provided that the rates so prescribed should be the only charges made for local telephone messages for a period of three years from May 1st, 1912. An order dated April 25th, 1912, recited that numerous complaints had been made with regard to the interpretation given to the order of January 2nd, and then the order proceeds to amplify and make additions to some of the provisions of that order which do not enter into the present case.
By an order passed by the Commission on September 26th, 1912, the order of the 2nd of January was still further modified by extending the period during which the flat rate subscribers might continue their contracts on that basis from October 1st, 1912, to April 1st, 1913 and granted to the Protective Telephone Association the right to show cause against the proposed revision up to January 1st, 1913. On October 29th, the Public Service Commission passed a fourth order, by the terms of which January 1st, 1913, was set as the date on which the measured rates provided for in the orders of January 2nd, and April 25th 1912, should become operative. By a letter of the Telephone Company dated December 18th, 1912, the plaintiffs were notified that on December 31st, their flat rate contract would be discontinued. Five days later the bill of complaint was filed, praying for an injunction to restrain any interference with the flat rate which the plaintiffs had been enjoying. A demurrer to the bill of complaint was sustained by the Circuit Court of Baltimore *Page 28 
City, and the bill dismissed. It is from that action that this appeal is taken.
A large number and variety of objections have been urged against the action of the Commission, most of which depend upon a careful examination and construction of the Act itself, in which adjudications elsewhere can have little force unless there is identity in the phraseology of the two Acts.
The most serious of the attacks made is that which is directed against the constitutionality of the Act. This is claimed to result from an attempt to invest the Commission with powers both legislative and judicial, possibly administrative as well, and therefore to be inimical to Article 8 of the Declaration of Rights, "that the legislative, executive and judicial powers of government ought to be forever separate and distinct from each other; and no persons exercising the functions of one of said departments shall assume or discharge the duties of any other." What has the Commission done in this case? It has had hearings upon rates proposed to be adopted for the services to be rendered by a public utilities corporation, and has by its order promulgated the rates which the company shall be permitted to charge to those making use of the service. Nowhere is the nature of such an Act better characterized than in the opinion by JUSTICE HOLMES, in Prentis v. Atl. Coast Line, 211 U.S. 210, when he says: "The establishment of a rate is the making of a rule for the future and therefore an act legislative, not judicial in kind. Proceedings legislative in nature are not proceedings in a Court, no matter what may be the general or dominant character of the body in which they may take place. That question depends not on the character of the body, but upon the character of the proceedings. The decision upon them can not beres judicata when a suit is brought. And it does not matter what inquiries may have been made as a preliminary to the legislative act. Most legislation is preceded by hearings and investigations, but the effect of the inquiry and of the decision upon it, is determined by the nature of the act to which the inquiry and decision led up. *Page 29 
The nature of the final act determines the nature of the previous inquiry. So when the final act is legislative the decision which induces it can not be judicial in the practical sense, although the questions considered might be the same that would arise in the trial of a case." And the same holding is made in The HomeTelephone Co. v. Los Angeles, 211 U.S. 274. Following these cases it must be held that the order of the Public Service Commission complained of in this case was a legislative rather than a judicial or administrative act, or a combination of any two of them, and consequently not objectionable on the constitutional ground.
It has been strenuously argued on behalf of the appellants that there has been no express repeal of the Acts of 1892 and 1894, by which a maximum charge was established by the Legislature; that repeals by implication are never favored by the Courts, and that the Public Service Act recognizes that rates, fixed by the Legislature, may co-exist with rates established by the Commission, provided there is no conflict between them. That repeals by implication are not favored is perfectly true, but the difficulty with this contention of the appellants is that in sec. 31 1/2 of the Act of 1910 (Ch. 180, p. 375), it is provided, "that all Acts or parts of Acts heretofore passed and now existing, prescribing or limiting the price at which any gas corporation or electric corporation, or any other corporationsubject to this Act, may furnish, sell or dispose of its gas, electricity, or other product or utility are hereby repealed, it being the intent of this Act that the powers of the Commission hereby created to ascertain the price of such gas or electricity or other product or utility as provided for herein, shall supersede all such Acts or parts of Acts aforesaid." A more sweeping repeal is rarely to be met with. By express terms it relates not merely to gas and electrity, but to all otherproducts and utilities produced or furnished by any corporation subject to the operation of the Act. Telephones and telephone service can not be declared otherwise than as a utility, and telephone companies are undoubtedly subject to the operation of the Act. Any possible doubt as to *Page 30 
that is removed by section 39 which declares: "That this Act shall apply to telegraph companies, telephone companies, telephone lines and telegraph lines within this State and to persons and corporations engaged in the transmission of intelligence within this State by telephone or telegraph."
It is a well recognized rule that all statutes upon the same subject matter are to be harmonized as far as possible, and this is true whether the Acts relating to the same subject were passed at different dates, separated by long or short intervals. They are all to be compared harmonized if possible, and, if not susceptible of a construction which will make all their provisions harmonize, they are made to operate together so far as possible consistent with the evident intent of the latest enactment. Sutherland on Statutory Construction, section 283. This rule of construction is applied even when the constitutionality of a statute is called in question. CHIEF JUSTICE WHITE has expressed it as follows in U.S. v. Del. Hudson Co., 213 U.S. 366: "The duty of the Court in construing a statute which is reasonably susceptible of two constructions, one of which would render it unconstitutional and the other valid, is to adopt that construction which saves its constitutionality (Knights Templar v. Jarman, 187 U.S. 197) and this includes the duty of avoiding a construction which raises grave and doubtful constitutional questions, if the statute can be reasonably construed so as to avoid such questions. (Harriman
v. Int. St. Com. Comn., 211 U.S. 407.)" Bearing this rule in mind, and looking to the manifest intent of the Legislature, it is perfectly apparent that the purpose was to place all corporations handling public utilities under the supervision and control of the Public Service Commission and with power in the Commission to regulate the rates charged for service, but that until the Commission did so regulate the charge any act or acts in force respecting them should remain unimpaired.
It has been urged that the effect of the Act, if it has any effect at all, is to invest the Commission with the power of repeal of an Act of the Legislature, and that this is beyond *Page 31 
the power of the Legislature to do. The all sufficient answer to this contention is, that the Legislature itself has repealed the prior enactments, only leaving it to the Commission to fix the time when such repeal shall become operative. That the Legislature itself can establish the rates to be charged by corporations operating public utilities, and change them from time to time is admitted. The only limit thereto is that such rates shall not be confiscatory; and it is settled by a long line of decisions in this State that the regulation of various agencies dealing with the public may be made either by the Legislature directly or through a board to which such power may be delegated. Singer v. State, 72 Md. 464; State v.Broadbelt, 89 Md. 565; State v. Knowles, 90 Md. 646;Scholle v. State, 90 Md. 729; State v. Hyman, 98 Md. 596.
An additional ground of objection urged by the appellants is that the only mode by which the Commission acquires jurisdiction over a utilities corporation is through an investigation instituted by that body or by its authority, or upon the complaint of some party feeling aggrieved by the action of the Commission; that the proceeding in this case came under neither of those heads, but was originated by the Telephone Company submitting to the Commission a schedule of proposed rates and asking the approval of them by the Commission. This is substantially the allegation of the first paragraph of the bill of complaint, and must be taken on demurrer as admitted. The bill does not, however, charge the Commission with acting in bad faith, or being derelict in the performance of any duty resting upon it. Assuming that the Telephone Company was the original actor in the proceeding, it was the plain duty of the Commission before passing any order or adopting any schedule to satisfy itself of the reasonableness of the charges proposed to be made for the service to be rendered. To have done less than this would have been a dereliction of duty, and until the contrary is alleged and made to appear by proof, the presumption in favor of the proper performance of duty by a public official must control. In no respect then does that which is alleged *Page 32 
to have been done in this case differ from an investigation instituted by the Commission, concluded by an order by the Commission based upon the investigation so made.
Complaint is also made that in the present case the action of the Commission amounts to the granting of an execution before judgment is entered against the appellant. The line of argument upon this point is difficult to follow.
The original order of the Commission of January 2d 1912, bore upon its face every appearance of finality. There were formally adopted a large number of schedules, and as to those which were reserved for future action, none of them could have affected the appellants. Immediately upon the passage of that order the appellants could have applied to the Commission for a rehearing under the provisions of section 11 of the Act, wherein it is provided "that after an order has been made by the Commission, any party interested therein may apply for a rehearing in respect to any matter determined therein, and the Commission may grant and hold such a rehearing, if, in its judgment, sufficient reason therefor be made to appear," but it is not alleged that the present appellants, or any of them, ever applied for such a rehearing. So far as can be judged from their conduct they acquiesced in the order which had been made by the Commission. Some suggestion was made in the argument that the act was invalid because it made no provision for an appeal to the Courts from an order of the Commission. It is true that the Act does not use the word "appeal" in connection with a resort to the Courts to obviate the effect of an order, but the rights of parties who may feel aggrieved by the action of the Commission are fully guarded and protected by the provision of section 43 of the Act "that any corporation subject to this Act, or any of the provisions of this Act, and any person in interest being dissatisfied with any order of the Commission, fixing any rate or rates, tolls, charges, schedules, joint rate or rates, or any order fixing any regulations, practices acts or service may commence any action in the Circuit Court for any county or before any judge of the Supreme Bench of *Page 33 
Baltimore City of appropriate jurisdiction which may be adopted for the purpose, against the Commission as defendant to vacate and set aside any such order on the ground that the rate or rates, tolls, charges, schedules, joint rate or rates, fixed in such order is unlawful, or that any such regulation, practice, act or service fixed in such order is unreasonable, in which action a copy of the complaint shall be served with the summons," * * * provided such action or suit be begun within 60 days after the entry or rendition of the order. Section 45 then gives an express right of appeal to this Court from any judgment rendered in any action or suit so had. The order of the Commission now complained of was made on the 2nd January, 1912, no application for a rehearing by the Commission appears to have been made at any time, and the bill of complaint in this case was not filed until December 23rd following, more than eleven months later. The same policy of masterly inactivity appears to have been adopted with regard to the order of the Commission of April 25th. These facts have been somewhat fully recited because of the complaint that these appellants have been virtually denied a hearing, and an execution issued against them without an opportunity to be heard. The facts appearing in this record do not in any way support this contention.
A motion was made in the Court below, but not passed on, to dismiss the complaint of the appellants as to the orders of January 2nd, April 25th and September 26th, upon the ground that as to those orders and each of them, the suit was not instituted within the time allowed by the Act. Nor is it necessary to pass upon them now. This is the first case which has come to this Court involving the Act creating the Public Service Commission, and even if the position taken by the counsel for the Commission is well founded a disposal of the case upon that ground would be to some extent an evasion of the questions involved. It has, therefore, seemed wiser to consider the several objections urged upon this Court and squarely meet the issues presented. Nor has there been much in the way of citation of authorities, for the reason that *Page 34 
in a case of this character the important element is the act itself and the phraseology of it; for as was said by JUSTICE MOODY, in Home Telephone Co. v. Los Angeles, 211 U.S. 274, "no case, unless it is identical in its facts can serve as a controlling precedent for another, for differences, slight in themselves, may through their relation with other facts, turn the balance one way or the other."
For the reasons indicated the decree appealed from will be affirmed.
Decree affirmed, with costs to the appellee. *Page 35