## OSCAR B. CHENOWETH et al.

*vs.*

## PUBLIC SERVICE COMMISSION.

*Regulation of Rates—Street Railway Company—Powers of Commission—City Ordinance—Evidence.*

Under Acts 1910, ch. 180, secs. 13, 31½, the Public Service Commission has power to grant to the United Railways and Electric Company of Baltimore the right to collect a greater rate of fare for passengers over its road than that prescribed by Acts 1900, ch. 313. pp. 624-629

In Acts 1910, ch. 180, sec. 13, providing that charges made or demanded by a common carrier shall be just and reasonable, and not more than allowed by law or by order of the commission, "conformably with the law," the quoted words do not limit the powers of the commission to increase rates, they merely requiring the order of the commission to be authorized by the law. p. 625

To bring a city ordinance before the Court of Appeals, there must be an agreement of counsel, or it must have been offered in evidence. p. 630

*Decided June 26th, 1923.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by Oscar B. Chenoweth and others against William M. Maloy and others, constituting the Public Service Commission of Maryland, to which bill the United Railways and Electric Company was, on its petition, made a party defendant. From a decree for defendants, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*John E. Dempster,* for the appellants.

*N. Charles Burke,* for the Public Service Commission.

*Joseph C. France,* with whom was *William H. Maltbie* on the brief, for the United Railways and Electric Company.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer to, and dismissing, the bill of complaint filed by the appellants against the appellees, constituting the Public Service Commission of Maryland. The bill alleges that the plaintiffs (appellants) individually and acting as the Civic Committee of the 16th Ward Republican League, are residents of the City of Baltimore and are daily riders and passengers on the street railways of said city, and as such riders and passengers are financially interested in the rate of fare charged by the United Railways and Electric Company of Baltimore City within the corporate limits of said city, as defined and limited by chapter 313 of the Acts of the General Assembly of Maryland of the year 1900.

The sole question in this case, as stated in the brief of the counsel for the commission, is: "Has the Public Service Commission power to grant the United Railways and Electric Company of Baltimore the right to collect a greater rate of fare for passengers over its road than that prescribed by chapter 313 of the Acts of 1900?" That act is now section 796 of the revised charter of Baltimore City of 1915, being section 768 of article 4 of Public Local Laws, title "City of Baltimore," and is as follows:

"796. The United Railways and Electric Company of Baltimore, its successors and assigns, shall charge five cents and no more, as a fare for the conveyance of each passenger over twelve years of age, and three cents and no more, for each child between the ages of four and twelve years, from any point on any of its lines to any other point on such lines within the City

of Baltimore; provided that such company shall give a free transfer, when the same shall be requested, upon the payment of each cash fare, which transfer shall be good at all points of intersection of lines of said railway for a continuous ride, except at such points on said lines where such form a route so as to permit a passenger to return in the same general direction of the line upon which the transfer was issued, the privilege of the transfer not to apply to the terminus of any line or route; provided that nothing in this act shall be construed to affect any of the interests of the Mayor and City Council of Baltimore in the said United Railways and Electric Company of Baltimore, or any of the railways consolidated under the corporate name."

The Public Service Commission, on the 31st day of December, 1919, passed order No. 5327, providing that, on and after January 1, 1920, and until midnight December 31st, 1920, and no longer, unless such time be extended, the United Railways and Electric Company should be permitted to charge seven cents fare for each passenger twelve years of age and four cents for each child between the ages of four and twelve years on any of its lines, and there are certain other provisions in it not necessary to mention. Then, on the 28th of December, 1922, the commission ordered that changes be made in certain of the existing zones as there set forth, which continued the increase of fare set out above until midnight on the 30th day of April, 1924, unless modified or superseded by the commission, etc.

The Act of 1910, ch. 180, p. 338, created and established the Public Service Commission, prescribed its powers and duties and provided for the regulation and control of public service corporations and public utilities, etc. Section 13 of that act in part is as follows:

"All charges made or demanded by any such common carrier for the transportation of passengers, freight or property, or for any service rendered or to

be rendered in connection therewith, as defined in
section 2 of this act, shall be just and reasonable and
not more than allowed by law or by order of the
commission, conformably with the law.   Every unjust
or unreasonable charge made or demanded for any
such service or transportation of passengers, freight
or property, or in connection therewith, or in excess
of that allowed by law or by order of the commission,
conformably with the law, is unlawful and prohib-
ited."

The appellants contend that the words "conformably with
the law" in section 13 are words of limitation on the powers
of the commission to increase rates.   That language does not
seem to us to present any difficulty.   When the statute says
that "all charges made or demanded * * * shall be just and
reasonable and not more than allowed by law, or by order of
the commission, conformably with the law," it means what it
says—that the charges (a) "shall be just and reasonable,"
and (b) "not more than allowed by law"—that is to say,
those fixed by statute then in force or which might be there-
after passed, or (c) those fixed "by order of the commis-
sion, conformably with the law"—*i. e.,* those fixed by order
of the commission provided it conforms with the law in
doing so.   Every unjust or unreasonable charge is declared
to be unlawful and prohibited, and cannot be in excess of that
allowed by law, or by order of the commission, conformably
with the law—that is to say an order passed which is author-
ized by the law.

We can illustrate the meaning of the term by reference
to some of our decisions.   In *Public Service Commn.* v.
*United Rys. & E. Co.,* 126 Md. 495, it was said by JUDGE
BURKE, speaking for the Court: "It is well settled that the
Public Service Commission can exercise only such powers as
the law has conferred upon it.   If an order complained of is
not within the scope of the authority conferred by law upon
the commission, it is unlawful and it is the duty of the court,
when applied to, to restrain its enforcement."

JUDGE STOCKBRIDGE, in speaking for the Court in *Havre de Grace* v. *Public Service Commn.*, 132 Md. 16, considered the powers of the commission at length and referred, amongst other cases, to *Public Service Commn.* v. *North Cent. Ry. Co.*, 122 Md. 355, 388, where JUDGE THOMAS said: "It must be observed that the power of the commission to fix reasonable rates, etc., is legislative—*Gregg* v. *Laird, supra* (121 Md. 1), and that the functions of the court in reviewing the actions of the commission are distinctly judicial and are exercised only for the purpose of determining whether such action of the commission is unreasonable or unlawful." Other cases might be cited, but it is unnecessary.

We cannot understand how it can be said that *Gregg* v. *Public Service Commn.*, 121 Md. 1, is not applicable to this case, as we deem it conclusive of it, and practically covers every point involved. As shown by JUDGE STOCKBRIDGE in that case, chapter 387 of the Acts of 1892 had undertaken the regulation of rates to be charged by telephone companies for the service rendered to their subscribers. The rental fixed by the act was a flat rate of $6.50 per month for one telephone and a lesser rate where the customer had two or more instruments. In 1894 the Legislature, by chapter 207 of that session, amended the prior act by providing that any person, firm or corporation might, by special contract, agree with the telephone company for special equipment or service at such rates, terms and conditions as might be stipulated in the contract. There were then two rates in force—one a flat rate and the other a contract rate. On January 2nd, 1912, the commission prescribed the rates of charges for telephone service in the City of Baltimore to be effective on and after May 1st, 1912, with an option to flat rate subscribers to continue the flat rate contracts until the first of October, 1912. On September 26th, 1912, the order of January 2nd was further modified by extending the period during which the flat rate subscribers might continue the contracts on that basis from October 1st, 1912, to April 1st, 1913. Another order

was passed on October 29th, as to the time the rates provided
for in the orders of January 2nd and April 25th, 1912,
should become operative.  The telephone company notified
the plaintiffs in that case that their flat rates would be dis-
continued on December 31st.  An injunction was applied for
to restrain any interference with the flat rates which the
plaintiffs had been enjoying.  A demurrer to the bill was
sustained and the bill dismissed.  From that action the ap-
peal was taken to this Court.

A number of questions were determined in that case.  Fol-
lowing the order adopted by JUDGE STOCKBRIDGE in his
opinion, we will state them, and a mere statement of them
would seem to be conclusive of this case:

(a) It was contended that the act creating the commission
was unconstitutional, but it was held by us "that the order of
the Public Service Commission complained of in this case
was a legislative rather than a judicial or administrative act,
or a combination of any two of them, and, consequently not
objectionable on the constitutional ground.

(b) It was argued that there had been no express repeal
of the Acts of 1892 and 1894, by which the maximum charge
was established by the Legislature, and that repeals by impli-
cation are never favored, etc., but we held that, while the
latter statement was true, the contention of the appellants
was not correct by reason of the fact that section 31½ of the
Act of 1910, ch. 180, p. 375, provided: "that all acts or parts
of acts heretofore passed and now existing, prescribing or
limiting the price at which any gas corporation or electric
corporation, *or any other corporation subject to this act,* may
furnish, sell or dispose of its gas, electricity, *or other product
or utility,* are hereby repealed, it being the intent of this
act that the powers of the commission hereby created to ascer-
tain the price of such gas or electricity or other product or
utility as provided for herein shall supersede all such acts or
parts of acts aforesaid."  (Italics ours.)

JUDGE STOCKBRIDGE then added:  "A more sweeping re-
peal is rarely to be met with.  By express terms it relates

not merely to gas and electricity, but to all other *products and utilities* produced or furnished by any corporation subject to the operation of the act." He then referred to section 39, which in terms referred to telephone companies, telegraph companies, telephone and telegraph lines within the State. If that reference gave added force to what had already been clearly said by JUDGE STOCKBRIDGE as to the repeal, we might add that section 55 of the act provides: "that all acts and parts of acts conflicting or inconsistent with any provision or provisions of this act are hereby repealed so far as they conflict or are inconsistent with any provision or provisions of this act."

The Act of 1910 is clearly and in terms applicable to such corporations as the United Railways Company, and there could have been no possible reason for not including such corporations in section 13.

(c) JUDGE STOCKBRIDGE, after stating the rule "that all statutes upon the same subject matter are to be harmonized as far as possible, and this is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals," and referring to the statement of CHIEF JUSTICE WHITE as to the duty of the court in passing on the constitutionality of a statute in *U. S. v. Del. and Hud. Co.,* 213 U. S. 366, said: "Bearing this rule in mind and looking to the manifest intent of the Legislature, it is perfectly apparent that the purpose was to place all corporations handling public utilities under the supervision and control of the Public Service Commission, and with power in the commission to regulate the rates charged for service, but that until the commission did so regulate the charge, any act or acts in force respecting them should remain unimpaired."

He then said: "It has been urged that the effect of the act, if it has any effect at all, is to invest the commission with the power of repeal of an act of the Legislature, and that this is beyond the power of the Legislature to do. The all-sufficient answer to this contention is, that the Legislature itself

has repealed the prior enactments, only leaving it to the commission to fix the time when such repeal shall become operative. That the Legislature itself can establish the rates to be charged by corporations operating public utilities and change them from time to time is admitted. The only limit thereto is that such rates shall not be confiscatory; and it is settled by a long line of decisions in this State that the regulation of various agencies dealing with the public may be made either by the Legislature directly or through a board to which such power may be delegated," citing a number of cases.

We have thus quoted fully from that case because we are of opinion that it is absolutely conclusive of this one. It would be unfortunate if the commission did not have such power over railroads, street railways and others, and to sustain the position of appellants would result in taking from the commission one of its most useful powers. As long as the commission exercises its powers fearlessly but wisely, it can, as the one in this State has often done, render valuable service to the public by protecting them, and at the same time doing justice to public service corporations. The *Gregg* case has been consistently followed by this Court. In *Crisfield* v. *Chesapeake and Pot. Tel. Co.,* 131 Md. 444, the municipality, under a power contained in its charter, passed after the Public Service Commission act, attempted to regulate the charges of the telephone company, but this Court said that by the Act of 1910 the commission had "its powers extended throughout the State, into every municipality, county or political division, so that the said commission should in the interest of the public be invested with ample powers for regulation, both as to service and charges, of all public utilities operating within the State." See also *Westminster* v. *Pub. Util. Co.,* 132 Md. 374, where it was said by JUDGE URNER: "In order to remove any statutory barrier to its comprehensive effect as to rate regulation, the Public Service Commission law repealed all acts or parts of acts, theretofore passed

and then existing, which prescribed or limited the price of any product or utility furnished by any corporation to which the new system of regulation was in general terms made applicable. Code, art. 23, sec. 444." See also *Yeatman* v. *Towers,* 126 Md. 513; and in the recent case of *Winfield* v. *Court of Industrial Relations,* 111 Kan. 580, Pub. Util. Rep., 1922 E, 791, many questions are thoroughly and fully considered, bearing on the subjects involved in this case, and the decision is in thorough accord with what we have said. See also *Ortega Company* v. *Trieay,* 260 U. S. 103.

There is, of course, nothing in the point that the ordinance of Baltimore City of 1859 was not repealed by the Act of 1900, ch. 313, as it was repealed as far as there was any conflict with the latter, but it was the Act of 1910 that repealed the prior acts affecting the railway. It might be added that if there was any reason for having that ordinance before us, it should have been offered in evidence, or brought before us under an agreement. *Central Savings Bk.* v. *Baltimore,* 71 Md. 515. But we have had it before us in *Baltimore* v. *United Rwys. Co.,* 107 Md. 250, and other cases, and there is nothing in it which could affect this case. There have been so many changes by the city and the Legislature in reference to that ordinance that it could not be effectively used to aid the appellants in their present contention.

We might extend this opinion by referring to many other cases, but it seems to us that the question is so thoroughly settled by *Gregg's* case, and others we have cited, that it would be useless to do so.

*Decree affirmed, the appellants to pay the costs.*